**WARM SPRINGS DAM TASK FORCE,**
**an unincorporated association, et**
**al., Plaintiffs,**

**v.**

**Lieutenant General William C. GRIBBLE,**
**Jr., Chief of Engineers, Corps of Engineers of the United States Army, et al.,**
**Defendants.**

**No. C–74–0649.**

United States District Court,
N. D. California.

April 28, 1977.

---

Robert L. Henn, Ferguson, Hoffman, Henn & Mandel, San Francisco, Cal., Paul D. Kayfetz, Bolinas, Cal., Leslie R. Perry, Luke, Libicki & Perry, Santa Rosa, Cal., for plaintiffs.

Rodney H. Hamlin, Asst. U. S. Atty., Lands Div., San Francisco, Cal., for defendants, United States.

Thomas B. Sawyer, Deputy County Counsel, County of Sonoma, Santa Rosa, Cal., for defendants, Sonoma County.

## OPINION

SPENCER WILLIAMS, District Judge.

The question before the court is whether the Corps of Engineers has met the requirements of NEPA in regards to its plan to construct a major public facility in the Northern District of California.

The project under consideration is an earth-fill dam across Dry Creek, a major tributary of the Russian River in Sonoma County.. It is a multi-purpose project designed to provide flood control, water supply and recreation. It has been authorized for construction by the Corps of Engineers (Corps) under the Flood Control Act of 1962, Pub.L. 87–874, § 202 (Oct. 23, 1962), 76 Stat. 1173, 1192, and was under construction when the National Environmental Protection Act (NEPA) became law. An environmental impact statement (EIS) was filed prior to the award of a contract for a major segment of the project and it is the adequacy of that statement which this litigation challenges.

Following fourteen days of testimony in the Spring of 1974, this court found that the EIS fully complied with NEPA and denied plaintiffs' motion for a preliminary injunction. (*Warm Springs Dam Task Force v. Gribble*, 378 F.Supp. 240 [D.C. 1974].) The court, however, ordered the Corps to comply with the requirements of Section 2(b) of Executive Order 11593 to reconsider the project in light of the nomination of certain archaeological sites in the area for listing on the National Register of Historical places. On May 24th, the Ninth Circuit denied plaintiffs' motion for an injunction pending appeal, but on June 17, 1974 the Honorable William O. Douglas, Circuit Justice for the Ninth Circuit granted plaintiffs' application for a stay "to maintain the status quo in the construction of Warm Springs Dam" pending appeal in the Court of Appeals. *Warm Springs Dam Task Force v. Gribble*, 417 U.S. 1301, 1310, 94 S.Ct. 2542, 2547, 41 L.Ed.2d 654 (1974).

On August 18, 1975 the Court of Appeals remanded the case to the district court, stating:

Two areas of information are charged as being deficient in the EIS. They are project safety because of potential damage by earthquake and the purity of the water in the proposed project reservoir. Response to the request of the Circuit Justice addressed to the Council on Environmental Quality of a date subsequent to the decision and opinion of the district court disclosed that both "during and after the hearing, the Corps indicated that it would perform further design review to consider seismicity problems and would further study the water quality and archaeological problems." Colonel Lammie for the Corps testified that he intended to let a contract for dynamic analysis of the proposed dam which would require some 6 months to complete. At the time of oral argument it was still not finished. He also stated that there was a continuing program in effect of monitoring for mercury, boron and fluoride in the springs that would partially feed the reservoir. The trial court has already retained continuing jurisdiction of the case for the purpose of protecting archaeological materials.

It is the opinion of the court that in consideration of these ongoing investigations the case be returned to the trial court pursuant to its retention of jurisdiction, in order to consider the materials developed by [sic] the Circuit Justice and to hear any additional matters required for its ruling on the application for a permanent injunction.

Although not ordered by the court, the Corps prepared and widely circulated a supplement to the EIS covering the archaeological aspects of the project, as well as seismicity and water purity matters.

On January 10, 1977 the court commenced hearings on plaintiffs' motion for a permanent injunction. At the outset plaintiffs chose to introduce no new evidence on the sufficiency of the archaeological and water purity aspects of the Supplement to the EIS. It was stipulated by the parties that all evidence presented at the hearing on the preliminary injunction may be incorporated into the trial on the permanent injunction. The vast majority of the evidence presented at the hearing related to the seismicity segment of the Supplement. Following three days of hearing and an extensive argument, the court found that all segments of the EIS fully complied with NEPA.

The reasons for the court's decision are as follows:

After the 1974 hearing the Corps contracted with Dames and Moore, an experienced consulting engineering firm, to perform a dynamic analysis of the dam. In connection therewith Dames and Moore conducted detailed geological field investigations, seismicity research, soil tests, laboratory tests, as well as the dynamic analysis. As a result of this dynamic analysis certain minor modifications were made in the original design of the dam to further increase its ability to withstand earthquake impact.

Detailed examination by Dames and Moore geologists, the Corps geologists, the U.S.G.S. geologists and the State geologists who examined the area did not find any evidence of an active earthquake fault in the project.[1]

In the preparation and publication of the EIS Supplement differences of opinion both as to the lengths of the various faults in the area and the maximum credible earthquake that could occur in the area were printed and thoroughly discussed. The pros and cons of the various positions are covered in the report and an exhaustive list of authorities relied upon is included. When the EIS and EIS Supplement are read together, there is no doubt in the court's mind that

1. While not contained in the EIS, evidence at the trial indicated that U.S.G.S. field instructions, published on a December 1976 map, did not disclose that any seismic earthquake had occurred in the project area within the last two million years.

they fully comply with the mandate of NEPA.

After the completion of the hearings on the Supplement to the EIS and its actual publication, the U.S.G.S. concluded certain studies which had some relevance to the project in question. First the U.S.G.S. released the results of preliminary field reconnaissance of the Maacama fault which indicated that it might extend further to the north in areas not covered by the December '76 map and that it could be longer than previously demonstrated. If such proved to be correct, the maximum credible earthquake which could occur in the area would be increased. Secondly, the U.S.G.S. released a study of the effect of impoundment of water in reservoirs on the triggering of earthquakes.

Plaintiffs argued vigorously that since these matters were not specifically taken into account in the EIS Supplement, it is defective.

The court disagrees both as to the assertions and the conclusions.

As to the question of the effect of the impoundment of water on the triggering of earthquakes, the subject is, in fact, discussed in the EIS. In its discussion, the EIS cites as authority for its conclusions many of the same authorities relied upon by the U.S.G.S. in its new report. And while the new report has some statistical data not contained in the EIS that might lead one to different conclusions than those contained in the EIS as to the possible effect of water impoundment on seismicity in the Warm Springs project area, the subject matter itself is adequately covered.

As to the Maacama fault, Dr. Darrell Gilbert Herd, geologist for the U.S.G.S., stated that in his opinion, based on post-EIS supplement preliminary field reconnaissance, there is reasonably good geologic evidence that the fault extended as far as Willits and that if it did, an eruption on the fault could cause an earthquake with a maximum credible magnitude of 7.3. He further testified there was no evidence or historical precedent to believe that Maacama fault would "break" as a unit causing an event in excess of 7.3 magnitude, well below the conservative 8.3 magnitude on the San Andreas Fault and 7.0 magnitude on the Healdsburg Fault which the structure was designed to withstand.

As interesting as this subsequent information may be it must be remembered that neither the U.S.G.S. statistical study nor the results of the preliminary field reconnaissance were available to the Corps until *after* hearings on and publication of the Supplement to the EIS was completed. To allow the courts to send the Corps back to the drawing board every time new and compelling arguments or materials are developed after completion of an EIS would enable industrious and imaginative opponents of any given project to forever postpone its construction.

The preparation of an EIS followed by its publication and public discussion is a valuable and properly required procedural step designed to alert the decision makers as to the total consequences that may result from the contemplated undertaking. This has been accomplished here and the objectives of NEPA have been fully met.

Subsequently developed material, real or imaginary, not reasonably available to the preparers of the EIS may, of course, as in the instant case come to light after the procedural requirements have been met. And when this does occur, the materials (and arguments) should be presented not to the court, whose judicial role has been fulfilled, but to the appropriate officials in the executive branch of government who possess the power to act.

The petition for injunction is denied.

This opinion and the earlier opinion of this court referred to above, constitute the court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### ORDER

After hearing arguments of counsel on their motions to modify the memorandum opinion previously filed herein,

IT IS HEREBY ORDERED that said opinion filed on March 16, 1977 is hereby vacated and the attached opinion entered in lieu thereof.