WARM SPRINGS DAM TASK FORCE, etc., et al., Plaintiffs-Appellants,

v.

Lieutenant General William C. GRIBBLE, Jr., etc., et al., Defendants-Appellees.

No. 77–2301.

United States Court of Appeals, Ninth Circuit.

Nov. 23, 1977.

Leslie R. Perry, of Luke, Libicki & Perry, Santa Rosa, Cal., for plaintiffs-appellants.

Jacques B. Gelin, Dept. of Justice, Washington, D. C., for defendants-appellees.

Before HUFSTEDLER, TRASK, and KENNEDY, Circuit Judges.

PER CURIAM:

The Warm Springs Dam Task Force ("the Task Force") seeks an injunction pending appeal barring further work on the proposed Warm Springs Dam in Sonoma County, California, on the ground that the Environmental Impact Statement ("EIS") prepared for the dam project by the Army Corps of Engineers fails to comply with the requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* (1971). After three days of hearings, the district court rejected the Task Force's motion for an injunction, finding that the challenged EIS fully complied with the NEPA, and it also rejected the Task Force's motion for an injunction pending appeal. (Fed.Rules Civ.Proc., Rule 62(c); Fed.Rules App.Proc., Rule 8.[1])

■■■ The considerations in determining whether to grant or deny the requested relief are three-fold: (1) Have the movants established a strong likelihood of success on the merits? (2) Does the balance of irreparable harm favor the movants? (3) Does the public interest favor granting the injunction? (*Alpine Lakes Protection Society v. Schlapfer* (9th Cir. 1975) 518 F.2d 1089, 1090.) As the Eighth Circuit has pointed out, the latter criteria merge into a single equitable judgment in which the environmental concerns of the movants must be weighed against the societal interests which will be adversely affected by granting the relief requested (*Reserve Mining Co. v. United States* (8th Cir. 1974) 498 F.2d 1073, 1076–77), a process which must be significantly affected by the realities of the situation. (*See Friends of the Earth, Inc. v. Coleman* (9th Cir. 1975) 518 F.2d 323, 330; *Lathan v. Volpe* (9th Cir. 1971) 455 F.2d 1111, 1116–17.)

We conclude that the public interest can best be served by expediting an appeal of the hearing on the merits and denying the requested interim injunctive relief. We do not believe that appellants have shown that they will suffer significant harm during the pendency of such an expedited hearing on the merits.

■■■ The scope of appellate review in this action is extremely narrow. While injunctions will issue under the NEPA if an EIS is inadequate (*see Environmental Defense Fund v. Tennessee Valley Authority* (6th Cir. 1972) 468 F.2d 1164, 1183–84; *Lathan v. Volpe, supra,* 455 F.2d at 1116–17; *Sierra Club v. Coleman* (D.D.C.1975) 405 F.Supp. 53, 54–55; *see also Cady v. Morton* (9th Cir. 1975) 527 F.2d 786, 798–99 n. 12; *Friends of the Earth, Inc. v. Coleman, supra,* 518 F.2d at 330 (no absolute right to an injunction); *accord State of New York v. Nuclear Regulatory Commission* (2d Cir. 1977) 550 F.2d 745, 753–57), the district court's finding that the EIS is adequate will be reversed only if based upon an erroneous legal standard or upon clearly erroneous

---

1. This litigation has a long history. The dam was originally approved in 1962, Flood Control Act of 1962; Pub.L. 87–874, but an EIS was first prepared in 1973, following the intervening enactment of the NEPA in 1970. In 1974, the Task Force commenced this action, first seeking a preliminary injunction, alleging the inadequacy of the EIS on a variety of grounds. After fourteen days of hearings, the district court denied the request, finding the EIS adequate, but it ordered the defendants not to disturb the archeological site threatened by the construction. *Warm Springs Dam Task Force v. Gribble* (N.D.Cal.1974) 378 F.Supp. 240, 242, 252. A request for an injunction pending appeal was denied by the district court and by this court, but an injunction was granted by Mr. Justice Douglas, sitting as a Circuit Justice, *Warm Springs Dam Task Force v. Gribble* (1974) 417 U.S. 1301, 94 S.Ct. 2542, 41 L.Ed.2d 654, *motion to vacate stay denied* (1974) 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156. On Appeal, we remanded for reconsideration of the issues of seismic safety and water quality, to be determined after renewed review and testing promised by the Corps. No. 74–1968 (9th Cir. August 18, 1975) (unpub. mem.). After three days of new hearings on the Task Force's motion for a permanent injunction and consideration of a Supplemental EIS and various tests and studies, the district court concluded that "all segments of the EIS fully complied with NEPA." *Warm Springs Dam Task Force v. Gribble* (N.D.Cal.1977) 431 F.Supp. 320, 322. The recent hearings incorporated by reference the prior hearing testimony and considered the original and supplemental EIS's as if they were one document. The two are referred to herein as "the EIS."

findings of fact.[2] (*Brooks v. Coleman* (9th Cir. 1975) 518 F.2d 17, 19; *Daly v. Volpe* (9th Cir. 1975) 514 F.2d 1106, 1108–09; *Sierra Club v. Morton* (5th Cir. 1975) 510 F.2d 813, 818. *See also Aguirre v. Chula Vista Sanitary Service and Sani-Tainer, Inc.* (9th Cir. 1976) 542 F.2d 779, 780–81; *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.* (9th Cir. 1975) 526 F.2d 86, 88.[3]) Judicial review of the adequacy of an EIS is also circumscribed. The substantive decision whether to proceed with a project is committed to the executive and legislative branches of government with which the judiciary will not interfere in the absence of a showing that the choice was "arbitrary and capricious," given the known environmental consequences. (*Trout Unlimited v. Morton* (9th Cir. 1974) 509 F.2d 1276, 1282–83; *Lathan v. Brinegar* (9th Cir. 1974) 506 F.2d 677, 692–93 (*en banc*). *See also Kleppe v. Sierra Club* (1975) 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 49 L.Ed.2d 576; *Environmental Defense Fund, Inc. v. Corps of Engineers of the United States Army* (5th Cir. 1974) 492 F.2d 1123, 1138–40 & n. 33; *Jicarilla Apache Tribe of Indians v. Morton* (9th Cir. 1973) 471 F.2d 1275, 1281; Note, The Least Adverse Alternative Approach to Substantive Review under NEPA, 88 Harv.L.Rev. 735 (1975).)

■ Judicial enforcement of NEPA includes strict compliance with the disclosure

and procedural provisions of the Act. Nevertheless, the test of EIS adequacy is pragmatic and the document will be examined to see if there has been a good faith attempt to identify and to discuss all foreseeable environmental consequences. (*Sierra Club v. Froehlke* (8th Cir. 1976) 534 F.2d 1289, 1299–1301; *Brooks v. Coleman, supra,* 518 F.2d at 19; *Sierra Club v. Morton, supra,* 510 F.2d at 818–19, 821; *Lathan v. Brinegar, supra,* 506 F.2d at 693.)

The Task Force's primary contention is that the dam has not been designed to resist a potential "maximum credible event," *i. e.,* an earthquake registering 7.5 to 8.1 on the Richter scale.[4] The dam is designed to resist a quake measuring 7.0 on the same scale. Dam failure could entail huge losses of life and damages to property. The Task Force's concerns are shared by the State of California, through the Resources Agency, which commented that "the responses to questions on seismicity are not adequate" and requested tests for a 7.5 event. The President's Council on Environmental Quality ("CEQ"), charged with review of environmental impact statements for the executive branch, 42 U.S.C. § 4344 (1971), "strongly recommended" in a letter to the Corps that an investigation of the desirability of such tests be undertaken in view of the California comment on the EIS.

**2.** The somewhat more liberal standards for granting an injunction under the NEPA than in other litigation do not affect the standards applicable to this Rule 8 motion nor the standards for review of the trial court's findings on the merits. *See Alpine Lakes Protection Society v. Schlapfer, supra,* 518 F.2d at 1090.

**3.** There is language in *Environmental Defense Fund, Inc. v. Armstrong* (9th Cir. 1973) 487 F.2d 814, which suggests that appellate review of the trial court's denial of an injunction under the NEPA must be based upon the "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A) rather than the clearly erroneous standard of Rule 52(a), Fed.Rules Civ.Proc. *See id.* at 817. However, the arbitrary and capricious standard applied only to administrative agency decisions, not findings of fact of a district court. *Environmental Defense Fund* was disapproved insofar as its language was taken to refer to the standard for judicial review of procedural compliance with the NEPA.

*See Trout Unlimited v. Morton* (9th Cir. 1974) 509 F.2d 1276, 1282–83; *Lathan v. Brinegar* (9th Cir. 1974) (*en banc*) 506 F.2d 677, 692–93 (arbitrary and capricious standard applies to decision to proceed with project; while 5 U.S.C. § 706(2)(D) applies to compliance with NEPA procedural requirements). *See also Cady v. Morton* (9th Cir. 1975) 527 F.2d 786, 793.

**4.** The Task Force's more extensive objections to water quality, archeological impact, discussion of alternatives, and other dam consequences have apparently been abandoned as they are not mentioned in the trial brief or motion papers. *See* 378 F.Supp. at 243–44. The Task Force also does not appear directly to attack the substantive decision to proceed with the dam. *See id.* at 243 n. 4 (stating that its original allegation that the decision was "arbitrary and capricious" was not seriously pressed at the 1974 hearing).

The dispute about the maximum credible event, in turn, is based upon differences of opinion among geological experts as to the size of and degree of activity of three fault systems in the vicinity of the dam. The district court found that:

"In the preparation and publication of the EIS Supplement differences of opinion both as to the lengths of the various faults in the area and the maximum credible earthquake that could occur in the area were printed and thoroughly discussed. The pros and cons of the various positions are covered in the report and an exhaustive list of authorities relied upon is included. When the EIS and EIS Supplement are read together, there is no doubt in the court's mind that they fully comply with the mandate of NEPA." (*Warm Springs Dam Task Force v. Gribble* (N.D.Cal.1977) 431 F.Supp. 320, 322–23.)

It further held that to the extent that the State of California and the Task Force relied upon studies conducted after the publication of the EIS, such data could not be used to render the EIS inadequate through the judicial review process, but should instead be addressed to the responsible executive branch agencies.[5]

The Task Force raised a number of specific objections to the EIS. The Task Force argues that it will prevail on the merits because undisputed evidence introduced at the hearing in support of those contentions below showed that "the Corps has still failed to deal in a meaningful manner with the seismic issue." However, the district court's findings are to the contrary, and the Task Force has not specified the portions of the record (other than the Resources Agency and CEQ comments) upon which it relies to show us that the findings are clearly erroneous. The Task Force relies on the continued dissatisfaction of the California Resources Agency with the seismic testing and particularly on the CEQ letter to the Corps. It suggests that the CEQ letter should be given great weight by this court as an indication that the EIS does not satisfy the NEPA and justifies issuance of an injunction, just as a 1974 CEQ letter persuaded Mr. Justice Douglas to grant a stay at an earlier stage in this litigation. (*See* note 1, *supra*; 417 U.S. at 1304–10, 94 S.Ct. 2542.) The CEQ objections are markedly different from those involved in the 1974 stay. In 1974, the CEQ had expressed its belief that the EIS was inadequate within the meaning of the NEPA, both in letters to the Corps and in a letter filed with the Supreme Court which had been directed to the Solicitor General. In the latter, the CEQ expressly stated that the EIS was inadequate in numerous respects and that an injunction was necessary to prevent irreparable harm to the public interest. (*Id.* at 1305, 94 S.Ct. 2542.) In contrast, the December, 1976, letter from the CEQ was directly addressed to the Corps and advised only that in the CEQ's opinion an independent assessment should be made by the United States Geological Survey of whether testing for a 7.5 event is necessary. It viewed this as important because the objections of the California Resources Agency were based upon USGS information and the issue remained "a matter of contention" between the Corps and the State of California. It states that such an assessment would "ensure that all questions of dam safety have been resolved prior to any final decision with respect to this project." The letter contains a strong suggestion that specified action be taken prior to constructing the dam, but the suggestion is not the

---

5. It is somewhat unclear in the present record whether the Corps failed to consider this later data in its attachments to the EIS and in the decision-making process. The Corps asserts that the California Resources Agency relied upon a map which was subsequently superseded by new USGS studies and that it was therefore correct in stating that there is "no basis in existing data" for assuming the additional tests are needed. The Task Force states that this is a gross misstatement of the evidence, but does not directly address the issue of whether the data was considered and rejected by the Corps and made part of the EIS record or simply disregarded as the trial court's opinion suggests. Both sides must attempt to explicate as precisely as possible the facts on which they rely to present their legal contentions in the appeal on the merits.

same as its earlier statement that the EIS was inadequate within the meaning of the NEPA. An EIS is not supposed to resolve all contentions but to identify them to enable the appropriate decision-makers to make an informed choice. (*Life of the Land v. Brinegar* (9th Cir. 1973) 485 F.2d 460, 472–73.) The CEQ's role is to advise the executive branch on the merits of proceeding with a project; it is not entrusted with decision making. (*See Sierra Club v. Callaway* (5th Cir. 1974) 499 F.2d 982, 990–91, 993; *Hiram Clarke Civic Club, Inc. v. Lynn* (5th Cir. 1973) 476 F.2d 421, 424.)

■ NEPA requires that "[p]rior to making any detailed (EIS) statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved." (42 U.S.C. § 4332(C).) The section also requires that copies of the statements of such agencies and of appropriate state agencies be made available to decision-makers and accompany the proposal throughout the project review process. The section does not specify the form which the consultation must take. Moreover, there is no requirement that the responsible agency alter its project or perform new studies in response to comments such as those of the California Resources Agency. The relevant questions under the NEPA are whether such comments are made available to decision-makers, whether the differences of opinion are readily apparent, and whether they receive good faith attention from decision-makers. (*See* 42 U.S.C. § 4332(C).) The purpose of an EIS is to disclose such issues, but the responsible agency is not under a duty to resolve them. (*Life of the Land v. Brinegar, supra,* 485 F.2d at 472–73. Of course, resolution of such issues may be required by the executive branch as a condition precedent to project approval or funding.)

■ The Task Force seeks only a "partial injunction;" it is not opposed to the continuance of activities which would not irrevocably commit the Corps and other decision-makers to the project. Such commitment cannot practicably be made before an expedited disposition on the merits. The Corps has yet to let contracts for road construction and the roads must be built before new work on the dam can begin; the next step is letting of contracts for the dam work itself; finally, a good portion of the work done prior to the commencement of this action must be removed prior to commencement of the dam as now designed, as the dynamic analysis conducted due to the Task Force's intervention revealed that the original design would not stand up under potential seismic stress. No further appropriation for the Warm Springs Dam now exists, and given the CEQ and State of California objections, it is unclear whether the project will proceed in any event until the seismic concerns are resolved.

Injunctive relief pending appeal is denied. The appeal is expedited, and a briefing schedule will hereafter issue. The motion to place the appeal before the same panel that heard the prior appeal is denied. Supplemental briefs *amicus* heretofore tendered are ordered filed.