PUNA SPEAKS, an unincorporated association, on behalf of itself and as representative of its members, included of which are Audrey Bear-Zuboty, Barbara Bell, Greg Cameron, Theo C. Ho, Lee A. Jung, Margaret Jung, Heather Lyman, Greg Owens, Dennis Stout, Marthann Stout, Carl A. Vasconcellos, Glenn Yasuda, and Thomas Zoetewey, Plaintiffs,

v.

Dr. James EDWARDS, United States Secretary of Energy, Hideto Kono, Director of the Department of Planning and Economic Development, State of Hawaii, The Research Corporation of the University of Hawaii (RCUH), a Hawaii corporation, Sidney Fuke, County of Hawaii Planning Director, Hawaiian Electric Company, Inc., a Hawaii corporation, Susumu Ono, Chairman, Board of Land and Natural Resources, State of Hawaii, William Yuen, Chairman, Land Use Commission, State of Hawaii, Barnwell Geothermal Corporation, a Hawaii corporation, and Puna Geothermal Venture, a Hawaii general partnership, Defendants.

Civ. No. 82–0457.

United States District Court, D. Hawaii.

Dec. 17, 1982.

Jack F. Schweigert, Honolulu, Hawaii, for plaintiffs.

Susan Cook, Washington, D.C., for defendant Dr. James Edwards.

Annette Y.W. Chock, Deputy Atty. Gen., Honolulu, Hawaii, for defendants Hideto Kono, The Research Corp. of the University of Hawaii and William Yuen.

R. Ben Tsukazaki, Deputy Corp. Counsel, Hilo, Hawaii, for defendant Sidney Fuke.

James E.T. Koshiba, Honolulu, Hawaii, for defendant Hawaiian Elec. Co., Inc.

William T. Tam, Deputy Atty. Gen., Honolulu, Hawaii, for defendant Susumu Ono.

John A. Roney, Honolulu, Hawaii for defendant Barnwell Geothermal Corp.

Bert T. Kobayashi, Jr., Benjamin A. Kudo, Honolulu, Hawaii, for defendant Puna Geothermal Venture.

## FINDINGS OF FACT, STATEMENTS OF LAW, CONCLUSIONS AND ORDER

FONG, District Judge.

By their Complaint for Declaratory and Injunctive Relief and Motion for Preliminary Injunction filed August 20, 1982, Plaintiff Puna Speaks, an unincorporated association, on behalf of itself and as representative of its members, came to this Court seeking *inter alia,* a preliminary injunction enjoining the continuation of activities with respect to three geothermal drilling and production projects, as well as any other wells that are being planned, in the Puna District of the island of Hawaii until all county, state and federal laws are complied with. Plaintiffs are also seeking a preliminary injunction restraining the county, state and federal governments from disbursing additional funds for the state HGP–A geothermal project ("HGP–A").

The matter came for hearing on September 29 and 30, 1982, on Plaintiffs' Motion, filed pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction. Jack F. Schweigert, Esq. appeared on behalf of Plaintiff Puna Speaks; Susan Cook, Esq. from the Land and Natural Resources Division of the U.S. Department of Justice appeared on behalf of Defendant Dr. James Edwards, United States Secretary of Energy; Annette Y.W. Chock, Esq. appeared on behalf of Defendants Hideto Kono, Director of the Department of Planning and Economic Development, State of Hawaii, The Research Corporation, University of Hawaii, William Yuen, Chairman of the Land Use Commission, State of Hawaii; William M. Tam, Esq. appeared on behalf of Defendant Susumu Ono, Chairman of the Board of Land and Natural Resources, State of Hawaii; John A. Roney, Esq. appeared on behalf of Defendant Barnwell Geothermal Corporation; James E.T. Koshiba, Esq. appeared on behalf of Defendant Hawaiian Electric Company, Inc.; R. Ben Tsukazaki, Esq. appeared on behalf of Defendant Sidney Fuke, Planning Director of the County of Hawaii; and Bert T. Kobayashi, Jr., Esq. and Benjamin A. Kudo, Esq. appeared on behalf of Defendant Puna Geothermal Venture.

AND THE COURT, having considered all of the evidence presented, having studied the various memoranda, affidavits, declarations and exhibits submitted by counsel prior to and during the aforesaid hearing, hav-

ing heard the testimony offered and the arguments of counsel made at the aforesaid hearing, and having studied the authorities cited by counsel and otherwise being fully advised in the premises, makes the following Findings of Fact and Conclusions and Order:

## FINDINGS OF FACT

1. The HGP–A project was a research effort by the University of Hawaii initiated in 1973 to identify, generate and promote the use of geothermal energy in Hawaii.

2. Through its course of development, the HGP–A project was funded by the State and County of Hawaii and the United States Department of Energy ("DOE").

3. In 1976, the DOE prepared an Environmental Assessment of the Hawaii Geothermal Project Well Flow Test Program, and in 1977, the DOE completed an Environmental Impact Assessment of the Hydrothermal Subprogram.

4. In 1978, the State of Hawaii completed a Revised Environmental Impact Statement for the Hawaii Geothermal Research Station utilizing the HGP–A Well at Puna, Island of Hawaii.

5. In 1979, the DOE completed an Environmental Impact Assessment of the Hawaii Hydrothermal Sub-program, Hawaii Geothermal Research Station, which analyzed the environmental impact of the construction and operation of the facility.

6. In 1980, the DOE completed an Environmental Impact of Geothermal Resource Development in Hawaii; socio-economic, air, odor-nuisance, sound and other impact studies were also completed.

7. The Environmental Assessments addressed the various environmental consequences of the project, more specifically, the studies addressed, in part, the impacts of hydrogen sulfide, sulfur dioxide, mercury emissions, and sound and odor-nuisances.

8. These environmental assessments and studies specifically addressed the impacts of hydrogen sulfide ($H_2S$), noting it's "rotten-egg" smell and that emissions were well within the health hazard standards of 10 ppm (parts per million).

9. Upon considering the environmental impacts of sulfur dioxide ($SO_2$) and mercury and other gaseous emissions, these assessments and studies further noted, that the impacts would not be a problem inasmuch as the ambient air quality would not be affected (within the limitations of the health hazard standards).

10. Dr. Richard Williams is a physician who is board-certified in family practice and lacks the necessary qualifications and experience as a clinical toxicologist and/or medical researcher in order to render expert testimony on the health effects of geothermal emissions; additionally Dr. Williams made his findings and conclusions without any reference to quantitative corroboration.

11. Further, Dr. Williams made his findings without reference to any independent determination on his part that the wells in question were actually operating on the date that he made his findings.

12. Three residents testified about their maladies and the maladies of their families but it was difficult to associate the maladies and ills to any direct proof that it came as a result of the activities of Defendants or any of them.

13. From the pertinent exhibits filed in this case, this Court finds that Defendants had reasonably considered all the various environmental consequences regarding the projects in controversy, having before them all the relevant environmental information at the time of the "negative-determination" decision.

14. These exhibits indicate that Defendants took adequate steps to ensure compliance with NEPA guidelines and that in good faith, they did identify and discuss all of the foreseeable environmental consequences in their consideration of the projects in question.

15. By reason of the foregoing, this Court finds that the environmental assessments and studies were adequate for the purposes of NEPA, therefore, Defendant DOE was not required to file a formal NEPA environmental impact statement.

120

16. Plaintiffs have not shown that DOE's decision to forego an environmental impact statement was unreasonable.

17. In view of the Court's finding that a formal EIS was not required, there is some considerable doubt regarding Plaintiff's probability of success on the merits; their Complaint being based primarily on NEPA violations.

18. Plaintiffs have therefore not sustained their burden of showing significant or irreparable harm should the preliminary injunction not issue.

19. Further the Court concludes that the public interest is more appropriately served by expediting a hearing on the merits and denying the requested interim relief.

## STATEMENTS OF LAW

■ 1. Although NEPA provides a new statutory basis for injunctive relief against proposed government action, the general requirements for the granting of a preliminary injunction even in suits grounded upon failure to file impact statements, have not been altered by the Act. National Environmental Policy Act of 1969, ("NEPA"), §§ 2 et seq., 42 U.S.C.A. §§ 4321 et seq., (1977). See, e.g., Sadler v. 218 Housing Corp., 417 F.Supp. 348, 359 (N.D.Ga.1976).

2. In all preliminary injunction cases the Court must apply the four-prong test, i.e., likelihood that Plaintiffs will prevail on the merits, irreparable harm and damage to Plaintiffs if injunctive relief is not granted, threatened injury to Plaintiffs outweighs threatened harm that injunction may cause to Defendants, and that granting injunction will not disservice public interest. Compare Keith v. Volpe, 352 F.Supp. 1324, 1349 (C.D. Cal.1972) (certain exceptional cases where it is not necessary to balance the equities are "comparatively rare"), aff'd sub nom. Keith v. Cal. Highway Commission, 506 F.2d 696 (9th Cir.1974), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975) with Warm Springs Dam Task Force v. Gribble, 565 F.2d 549, 551 (9th Cir.1977) (tripartite test approved for NEPA injunctive actions), aff'g 431 F.Supp. 320 (N.D.Cal.1977), aff'd per curiam, 621 F.2d 1017 (9th Cir.1980).

See also The National Wildlife Federation v. Adams, 629 F.2d 587 (9th Cir.1980).

■ 3. However, as noted in Columbia Basin Land Protection Ass'n v. Kleppe, 417 F.Supp. 46 (E.D.Wash.1976), aff'd sub nom. Columbia Basin Land Protection Ass'n v. Schlesinger, 643 F.2d 585 (9th Cir.1981), in cases of alleged violations of the National Environment Policy Act, this Court's authority to balance the relative harm to the parties that would result from an injunction or to determine the public interest has been effectively preempted. See also State of Cal. By and Through Brown v. Watt, 520 F.Supp. 1359, 1382 (C.D.Cal.1981) quoting Trout Unlimited v. Morton, 509 F.2d 1276, 1281 (9th Cir.1974).

4. This Court must therefore determine whether Plaintiffs have carried their burden of showing significant or irreparable harm and damage, and the likelihood of ultimate success of their lawsuit in order to justify the relief prayed for.

■ 5. Under the guidelines promulgated by Kleppe v. Sierra Club, 427 U.S. 390, 410, n. 21, 96 S.Ct. 2718, 2730, n. 21, 49 L.Ed.2d 576 (1976), the only role of this Court is to ensure that the D.O.E. had taken a "hard look" at all foreseeable environmental consequences; it cannot "interject itself within the area of discretion of the [agency] executive as to the choice of action to be taken." Accord, State of Cal. v. Bergland, 483 F.Supp. 465, 482 (E.D.Cal.1980).

6. Warm Springs Dam Task Force v. Gribble, supra at 1027 further states that "the substantive decision to proceed or not is committed to agency discretion, and this Court should not interfere unless the decision was made arbitrarily or capriciously." Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1976). Lathan v. Brinegar, 506 F.2d 677, 692–93 (9th Cir.1974) (en banc).

7. This Court is not required to "determine whether a challenged project will in fact have significant effects" but "whether the responsible agency has reasonably concluded that the project will have no significant adverse environmental consequences."

*Preservation Coalition v. Pierce,* 667 F.2d 851, 855 (9th Cir.1982) [Emphasis added.]; *City and County of San Francisco v. United States,* 615 F.2d 498, 500 (9th Cir.1980); *Get Oil Out, Inc., v. Andrus,* 477 F.Supp. 40, 43 (C.D.Cal.1979) quoting *City of Davis v. Coleman,* 521 F.2d 661, 673 (9th Cir.1975); *see Portela v. Pierce,* 650 F.2d 210, 213 (9th Cir.1981).

■ 8. Having concluded that Defendants acted properly with respect to the Puna District projects, and in light of Plaintiffs' failure to show irreparable harm and sufficient probability of ultimate success on the merits, this Court has no alternative but to refuse the relief prayed for.

## CONCLUSIONS AND ORDER

Based on the Findings of Fact and Statements of Law above noted, this Court hereby concludes as follows:

(1.) Plaintiffs herein have failed to sustain the burden of proof for the relief prayed for.

(2.) Accordingly, Plaintiffs' Motion for a Preliminary Injunction is therefore DENIED.