Mario LOPEZ, et al.,
Plaintiffs-Appellees,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, et al.,
Defendants-Appellants.

No. 83–6126.

United States Court of Appeals,
Ninth Circuit.

Aug. 24, 1983.

J. Paul McGrath, Washington, D.C., Stephen S. Trott, William Kanter, Eloise E. Davies, Washington, D.C., for defendants-appellants.

Before PREGERSON, BOOCHEVER and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The Secretary of Health and Human Services seeks a partial stay pending appeal of a preliminary injunction issued by the United States District Court for the Central District of California.[1] *See* Fed.R.App.P. 8(a); Ninth Circuit R.App.P. 6(h). The order requires the restoration of disability benefits to a large number of Social Security recipients. From 28,000 to 78,000 individuals may be eligible. We reject the Secretary's request for a stay and allow the preliminary injunction to stand.

## BACKGROUND

The underlying dispute before the district court involves a class action[2] challenge to policies and procedures used by the Secretary in terminating Social Security disability benefits. *See* 42 U.S.C. §§ 401–431 (1976 and Supp. IV 1980) (Social Security Disability Insurance (SSDI) benefits for disabled workers); 42 U.S.C. §§ 1381–1383 (1976 and Supp. IV 1980) (Supplemental Security Income (SSI) benefits for persons who are both poor and disabled). According to findings made by the district court, since March of 1981 the Social Security Administration has drastically increased the rate at which it reviews the status of per-

Elena H. Ackel, Los Angeles, Cal., Lew Hollman, Pacoima, Cal., Bruce Iwaskai, Marilyn Holle, Ellen Finkelberg, Frankel & Finkelberg, Los Angeles, Cal., for plaintiffs-appellees.

1. The Secretary also requested "in any event a temporary stay." We have previously denied that request.

2. The district court certified as the plaintiff class those Supplemental Security Income and Social Security Disability Insurance recipients who live within the Ninth Circuit and "who have been or will be considered for termination after August 30, 1981, and SSI recipients under the 'grandfather clause' of the Social Security Act who have been or will be considered for termination after August 25, 1980, such consideration being or having been for the asserted reason that the claimant's disability had ceased" [footnotes omitted].

sons receiving disability benefits.[3] As a result, the number of people who have had their benefits terminated annually has doubled—from 98,000 removed from the disability rolls in fiscal year 1981 to 195,474 terminated in fiscal year 1982.

Plaintiffs contend that the procedures used by the Secretary of Health and Human Services in terminating the benefits of disabled persons are in direct violation of two decisions of this court. In *Patti v. Schweiker*, 669 F.2d 582, 587 (9th Cir.1982), and *Finnegan v. Matthews*, 641 F.2d 1340, 1345 (9th Cir.1981), we held that before Social Security disability benefits can be terminated on the ground that the recipient is no longer disabled, the Secretary must introduce evidence that the recipient's medical condition has improved. The principal rationale underlying these decisions is that the Social Security Administration's initial determination of disability creates a presumption that the person remains disabled. To terminate benefits, then, the Secretary is "required to 'meet or rebut'" the presumption "with evidence that [the recipient's] condition has improved in the interim." *Patti*, 669 F.2d at 587. *See also Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir.1973) ("Once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged.").

The Secretary of Health and Human Services subsequently announced that she "does not acquiesce" in and therefore would not follow this court's holdings in *Patti* and *Finnegan*.[4] *See* Social Security Rulings 82–10c and 82–49c. Instead, the Secretary has ordered that Social Security disability benefits be terminated on the ground of lack of disability regardless of whether the recipient's medical condition has improved since the time of the initial disability determination. *See* Social Security Ruling 81–6.

This policy was challenged by plaintiffs in district court. Plaintiffs' suit is framed in large part as a constitutional challenge to the policy of nonacquiescence. Plaintiffs argue that the policy violates the principles of separation of powers and *stare decisis* as well as their rights to due process and equal protection.

On June 16, 1983, in a thorough, careful, and well-reasoned decision, Senior District Judge William P. Gray granted plaintiffs' motion for a preliminary injunction. 572 F.Supp. 26. The court restrained the Secretary "[f]rom failing to follow, implement or accord precedential effect to" *Finnegan* and *Patti* and from implementing the nonacquiescence policy announced in Social Security Rulings 82–10c, 82–49c, and 81–6.

The Secretary did not seek to stay these aspects of the district court's order. Rather, the government requested that the following portion of the district court's injunction be stayed pending appeal:

(c)(i) Within sixty (60) days following the date of this order, the defendants will notify (a) each class member who had been receiving Supplemental Security Income Disability benefits under 42 U.S.C. § 1382c(a)(3)(E), and who was terminated from such benefits after August 25, 1980, and (b) all other persons who have been terminated from either Title II social security disability insurance or Title XVI Supplemental Security Income Disability after August 30, 1981, for the purported reason that his or her disability had ceased, whether or not such person has appealed, that:

Such person may apply for reinstatement of benefits if he or she believes that his or her medical condition has not improved following the granting of disability benefits.

(ii) Upon receiving such application, the defendants will forthwith reinstate and pay benefits in the monthly amounts

---

3. The district court found that in calendar year 1980, 185,639 Continuing Disability Investigations (CDIs) were conducted; in the fiscal year 1982, 435,262 CDIs were undertaken.

4. The Secretary did not seek Supreme Court review of our decisions in either *Patti* or *Finnegan*. The individual litigants in the two cases did, however, receive the relief mandated by this court.

such person would have been receiving had his or her benefits not been interrupted.

(iii) Following such reinstatement, if the defendants or their agents or employees conduct a disability investigation or other screening of such person, they will apply the standards set forth in *Patti v. Schweiker* and *Finnegan v. Matthews* and, if they conclude that such person's medical condition has improved and he or she is no longer disabled, they will identify the evidence relied upon to reach that conclusion.

(iv) Following such review, persons who are notified of an initial determination that their benefits shall cease shall be given an opportunity to contest the determination and pending such review, they shall continue to receive aid as provided in current laws and regulations.

The Secretary's request for a partial stay and for a temporary stay, characterized by the government as an "emergency motion," was filed on Thursday, August 11, 1983—56 days after the district court issued the preliminary injunction and only four days before the Monday on which the Secretary was required to notify terminated recipients of their eligibility for reinstatement. This court received the lengthy papers and record in this case on Friday, August 12, 1983. On Saturday, August 13, we issued a six page order rejecting the Secretary's request for a temporary stay and declining to act "on an emergency basis" on the request for a partial stay. Our decision was based in part on the fact that the requirement that terminated recipients be notified by August 15, 1983 of their potential eligibility for benefits was the only immediate obligation imposed upon the government. We reasoned that the bulk of the administrative costs and the cost of reinstating benefits—the source of the injury which the Secretary argues justifies a stay—would not start to accrue until later, when the former recipients begin reapplying for benefits. Thus, we saw no necessity to issue a temporary stay or to grant a partial stay pending appeal on an "emergency" basis— especially given the Secretary's unexplained delay in seeking such relief.

On Monday, August 15, 1983, the Secretary, in compliance with paragraph (c)(i) of the district court's order, notified 28,557 members of the plaintiff class of their eligibility to reapply for disability benefits. The issue remaining before us is whether the Secretary must now comply with the remainder of paragraph (c). In other words, while the appeal from the preliminary injunction order is pending, must the Secretary reinstate benefits to those disabled persons who file applications, and may she then terminate those benefits only in accordance with the procedures required by our decisions in *Patti* and *Finnegan*?

## STANDARD OF REVIEW

The standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction. *See Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017, 1018 n. 3 (9th Cir.1980). In this circuit there are two interrelated legal tests for the issuance of a preliminary injunction. These tests are "not separate" but rather represent "the outer reaches 'of a single continuum.'" *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. *Id. See also Miss Universe, Inc. v. Flesher,* 605 F.2d 1130, 1134 (9th Cir.1979). At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor. *Los Angeles Memorial Coliseum Commission,* 634 F.2d at 1201; *Miss Universe,* 605 F.2d at 1134. "[T]he relative hardship to the parties" is the "critical element" in deciding at which point along the continuum a stay is justified. *Benda v. Grand Lodge of International Association of Machinists, etc.,* 584 F.2d 308, 314–15 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). In addition, in cases such as the one before us, the public interest is a factor to be strongly considered. *See Warm Springs*

*Dam Task Force v. Gribble,* 565 F.2d 549, 551 (9th Cir.1977).

In this case, the Secretary seeks a stay pending appeal of a preliminary injunction. Therefore, in order to determine whether the Secretary has raised serious legal questions or whether she has shown a probability of success on the merits, we must evaluate her arguments for overturning the district court's preliminary injunction on appeal. As a general rule, we have held that an "order issuing or denying a preliminary injunction will only be reversed if the lower court abused its discretion or based its decision upon erroneous legal premises." *Los Angeles Memorial Coliseum Commission,* 634 F.2d at 1200.

## DISCUSSION

### I. IRREPARABLE INJURY, THE BALANCE OF HARDSHIPS, AND THE PUBLIC INTEREST.

■ The Secretary's contention that the government will suffer substantial hardship in the absence of a stay pending appeal is premised solely on the financial and administrative costs of reinstating disability benefits to former recipients. According to the Secretary, 28,557 terminated recipients were notified on August 15, 1983, of their eligibility to reapply for benefits. The government estimates that if every one of these former recipients reapplies for benefits, the total monthly cost of restoring benefits pending readjudication of claims will be $12,000,000. The government puts the total administrative cost of implementing the district court order at $10,300,000.[5]

The district court's injunction will undoubtedly impose some burden on the government. Even if we accept the Secretary's estimates at face value, however, the government has not demonstrated that the balance of hardships tips in its favor.[6] On the contrary, we agree with the district court's conclusion that the balance of hardships in this case strongly favors plaintiffs.

**5.** These estimates are contained in the Secretary's amended declaration received by this court on August 17, 1983. The cost estimates previously supplied to the district court by the government were almost three times as high: the monthly cost of reinstating benefits was put at $32,000,000, and the total administrative cost was estimated at $28,000,000. Even considering these much higher cost estimates, the district court did not find that the disability insurance trust fund would be endangered by the issuance of a preliminary injunction or that the balance of hardships tipped in the government's favor.

**6.** There are several reasons to believe that the Secretary's arguments regarding financial harm are somewhat exaggerated. To begin with, *most of the increased administrative workload*—the holding of hearings—will not occur automatically; rather, hearings will be necessary only in cases in which the Secretary believes that there is evidence that she can introduce to show an improvement in medical condition, and thus a proper basis for terminating benefits.

Second, there is no evidence in the record that the increased expenditures necessitated by the district court's order would imperil the Social Security trust fund. To the contrary, plaintiffs have presented evidence indicating that the trust fund for disability insurance is currently solvent and that the long-term actuarial predictions for the fund also indicate solvency.

Third, the government's cost estimates ignore the increased burden placed on state and local taxpayers by the Secretary's actions. According to one study presented by plaintiffs, 48% of those Supplemental Security Income recipients terminated in Michigan subsequently became eligible for other government-funded welfare programs, while 7% entered psychiatric facilities, 4% entered prisons or jails, 5% received outpatient mental health services, and 2% died. Similarly, New York state officials estimate that the Secretary's disability terminations would cost New York state and local governments $234 million annually in additional welfare costs as well as an extra $165 million annually in mental health care expenditures. The Secretary's estimates of harm to the taxpayer completely ignore these other costs. We seriously question whether the public interest is served in this case by merely shifting the tax burden from federal to state and local governments. *See, e.g., Leschniok v. Heckler,* 713 F.2d 520, at 524 (9th Cir.1983) (noting "a shift of the welfare burden from one program to another, from primarily federal to primarily state sources of funds," as a result of Social Security benefit terminations); *Mental Health Association of Minnesota v. Schweiker,* 554 F.Supp. 157, 167 (D.Minn.1982) ("There is no public interest in shifting financial responsibility for the psychiatrically disabled from a solvent disability fund to state and local government.").

Plaintiffs do not attempt to match in dollars and cents the monetary harms that will allegedly be suffered by the government. Yet the physical and emotional suffering shown by plaintiffs in the record before us is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government. We find ample support for Judge Gray's persuasive finding "that some who have unexpectedly lost benefits have already suffered deprivation of life's necessities, further illness, or even death from the very disabilities that the Secretary deemed them not to have." Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.

We also consider it crucial that, because the members of plaintiffs' class are largely infirm and disabled, their resources and life spans are by definition extremely limited. Deprivation of benefits pending trial might cause economic hardship, suffering or even death. Retroactive restoration of benefits would be inadequate to remedy these hardships.[7] Following his thorough review of the record, Judge Gray reached a similar conclusion: "Retroactive relief [for plaintiffs] would be inadequate, and perhaps too late, to ensure that the purpose of Social Security disability benefits, i.e., provision of a minimum standard of living for the poor and disabled, will be served." *See also Leschniok v. Heckler,* 713 F.2d 520, at 524 (9th Cir.1983) ("We fail to comprehend the Secretary's argument that financial compensation at some future date, should the claimants survive and prevail, mitigates the hardship which is visited upon claimants and their families each and every day."); *Caswell v. Califano,* 583 F.2d 9, 14 (1st Cir.1978) ("It is simply not true that a claimant for disability benefits, not infre-

quently in dire financial circumstances due to his disability, is truly made whole by retroactive payments which he has had to survive well over a year without."); *Mental Health Association of Minnesota v. Schweiker,* 554 F.Supp. 157, 165–66 (D.Minn.1982) ("[C]lass members who have been denied [disability] benefits or have had benefits terminated have suffered serious harms ... [that] are not recompensable through a retroactive award of benefits.").

Here, the question of the public interest is inseparable from the issues relating to the relative hardship suffered by the litigants. Up to now, we have discussed the government's interest only in the narrowest terms—the administrative and financial impact of the preliminary injunction. For purposes of determining the relative hardship to the parties, it may be appropriate to do so—to judge the government's narrow interest in terms of its role as a litigant. In a broader sense, however, the government's interest is the same as the public interest. The government must be concerned not just with the public fisc but also with the public weal. In assessing this broader interest, we are not bound by the government's litigation posture. Rather, we make an independent judgment as to the public interest.

It is not only the harm to the individuals involved that we must consider in assessing the public interest. Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges. Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required. It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time. It would be unfortunate, but far less harmful to society, were

---

7. We also note, but do not place much emphasis on, the fact that the government will have the opportunity to recover benefits that were paid erroneously. The district court has expressly conditioned the receipt of reinstated benefits under the preliminary injunction on the Secretary's right to recoup such payments if the recipient is subsequently terminated in accordance with *Patti* and *Finnegan.* This may well be more of an illusory than a practical remedy. *Mathews v. Eldridge,* 424 U.S. 319 at 347, 96 S.Ct. 893 at 908, 47 L.Ed.2d 18.

the government to succeed in overturning the preliminary injunction but be unable to recoup all or a portion of the funds.

In summary, the balance of hardships as between the litigants lies sharply in favor of the plaintiffs. When the public interest is included, that balance is overwhelming.

## II. PROBABILITY OF SUCCESS ON THE MERITS AND THE EXISTENCE OF SERIOUS LEGAL QUESTIONS.

The Secretary makes two principal arguments regarding the merits of her appeal from the order granting the preliminary injunction. First, the Secretary attempts to defend her policy of "nonacquiescence" with federal court decisions. This defense, presented in a footnote to the government's brief, is far from persuasive. To begin with, other circuits that have considered the question have already rejected the Secretary's argument that a federal agency can legitimately ignore federal appeals court precedents. *See, e.g., Jones & Laughlin Steel Corp. v. Marshall*, 636 F.2d 32, 33 (3d Cir.1980); *ITT World Communications v. FCC*, 635 F.2d 32, 43 (2d Cir.1980); *Ithaca College v. NLRB*, 623 F.2d 224, 228–29 (2d Cir.), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Mary Thompson Hospital, Inc. v. NLRB*, 621 F.2d 858, 864 (7th Cir.1980); *Allegheny General Hospital v. NLRB*, 608 F.2d 965, 970 (3d Cir.1979). *See also Chee v. Schweiker*, 563 F.Supp. 1362, 1364–65 (D.Ariz.1983); *Siedlecki v. Schweiker*, 563 F.Supp. 43, 46–48 (W.D. Wash.1983); *Hillhouse v. Harris*, 547 F.Supp. 88, 93 (W.D.Ark.1982). Moreover, the cases cited by the Secretary to support her position appear to be inapposite. In short, our review of the relevant case law indicates that there is little chance that the Secretary will succeed in her argument that nonacquiescence is a legitimate policy, or, to put it more precisely, that she will persuade us that the district court committed a legal error in concluding that there was a strong probability that the plaintiffs would ultimately prevail on this fundamental issue.

Second, it should be obvious that, even if the Secretary's issuance of nonacquiescence rulings regarding *Finnegan* and *Patti* does not violate the Constitution, each of her department's decisions based on those rulings will be rejected summarily whenever challenged in this circuit. We see little chance that the Secretary will convince this Court to the contrary.[8]

The majority of the Secretary's attention is devoted to her second argument: that the district court improperly exercised jurisdiction over some members of plaintiffs' class. The district court premised its jurisdiction on 42 U.S.C. § 405(g), which provides a limited avenue of judicial review upon the filing of a complaint within 60 days of a final decision of the Secretary.[9]

In order to satisfy the section 405(g) requirements, plaintiffs must overcome sev-

---

**8.** The Secretary also argues that her nonacquiescence rulings issued after the decisions in *Patti* and *Finnegan* constitute superceding regulations to which this Court should defer. Because the *Patti* and *Finnegan* decisions were not based in any way on particular Health and Human Services regulations, we do not think the Secretary is likely to prevail on this argument.

**9.** There may be a basis for the district court's jurisdiction other than § 405(g). Plaintiffs claim that 28 U.S.C. § 1361 (1976) provides an independent basis for such jurisdiction. Section 1361 gives the district court "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." We have recently held that section 1361 offers "an independently adequate ground for jurisdiction" in a case dealing with a "constitutional challenge" to the illegal termination of social security disability insurance benefits. *Leschniok v. Heckler*, 713 F.2d at 522 (9th Cir.1983). *See also Elliot v. Weinberger*, 564 F.2d 1219, 1226 (9th Cir.1977), *aff'd in part, rev'd in part on other grounds sub nom., Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Plaintiffs contend that, in light of the Secretary's flagrant noncompliance with *Patti* and *Finnegan*, mandamus is appropriate because "the claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." *Elliot v. Weinberger*, 564 F.2d at 626. Plaintiffs also contend that section 1361 jurisdiction exists because they are making a constitutional challenge to the procedures used by the Secretary rather than seeking the payment of benefits, citing *Ringer v. Schweiker*, 697 F.2d at 1294, 1296. Since the

eral procedural obstacles. First, plaintiffs must have presented a claim for benefits to the Secretary. Contrary to the Secretary's assertion, there is substantial authority for the proposition that this requirement is satisfied once the Secretary has had an opportunity to act and benefits have actually been terminated. *See Ellison v. Califano,* 546 F.2d 1162, 1164 (5th Cir.1977).

The second requirement under section 405(g) is that a final decision must have been made by the Secretary. This requirement may be waived by the Secretary or excused or deemed complied with by the court. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *Jones v. Califano,* 576 F.2d 12, 18–19 (2d Cir.1978); *Liberty Alliance for the Blind v. Califano,* 568 F.2d 333, 346 (3rd Cir.1977). Some of the named plaintiffs and an unknown number of the plaintiff class have exhausted all administrative remedies and obtained final decisions; these plaintiffs indisputably are properly before the district court. The Secretary argues, however, that there is no jurisdiction over the other plaintiffs. The district court evaluated the Secretary's arguments and decided that the plaintiffs' failure to exhaust their administrative remedies was excusable because it would have been futile to require plaintiffs to pursue administrative remedies in the face of the Secretary's announced policy of nonacquiescence. The district court's analysis finds strong support in two decisions that were thoroughly considered and discussed by Judge Gray in his opinion: *Weinberger v. Salfi,* 422 U.S. 749, 765–66, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975); and *Ringer v. Schweiker,* 697 F.2d 1291 (9th Cir.1983), *cert. granted,* —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983).

There is much additional support for the district court's conclusion that the section 405(g) exhaustion requirement does not apply in this case. First, plaintiffs have raised constitutional challenges to the Sec-

retary's nonacquiescence policies. The Second Circuit has held that the exhaustion requirement should be waived where constitutional challenges similar to the ones in this case are raised. *See Jones v. Califano,* 576 F.2d at 18–19. *See also Mathews v. Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900, 47 L.Ed.2d at 30 ("It is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context. The Secretary would not be required to even consider such a challenge."). Second, the Third Circuit has decided that, even as to statutory rather than constitutional issues, the exhaustion requirement can be waived whenever the Secretary has taken a "final position" on a question. *See Liberty Alliance for the Blind v. Califano,* 568 F.2d at 346 ("The test for exhaustion of a statutory issue in an individual case . . . should be whether the Secretary has taken a final position on that issue. In the class context the test should be no different."). *See also Jones v. Califano,* 576 F.2d at 19 (waiver of exhaustion requirement when "the Secretary had had ample opportunity . . . to modify his position.").

Finally, the district court emphasized the obvious undesirability, as well as the due process and equal protection implications, of the dual system of benefit review created by the Secretary's nonacquiescence policy. As the district court noted,

[t]he policy of nonacquiescence announced by the Secretary creates two standards governing claimants whose disability benefits are terminated as a result of such nonacquiescence. If such a claimant has the determination and the financial and physical strength and lives long enough to make it through the administrative process, he can turn to the courts and ultimately expect them to apply the law as announced in *Patti* and *Finnegan.* If exhaustion overtakes him and he falls somewhere along the road leading to such ultimate relief, the nonacquiescence and

district judge found jurisdiction under § 405(g), he did not find it necessary to consider or

resolve the section 1361 question.

the resulting termination stand. Particularly with respect to the types of individuals here concerned, whose resources, health and prospective longevity are, by definition, relatively limited, such a dual system of law is prejudicial and unfair. The Second Circuit expressed a similar view in *Jones v. Califano,* 576 F.2d at 19.[10]

■ The third requirement under section 405(g) is that plaintiffs' appeals must have been brought within 60 days of the Secretary's final decision. The Secretary argues that all decisions not challenged within 60 days are unappealed and thus have a *res judicata* effect in later proceedings. Because the 60 day requirement can be waived by the parties, *Mathews v. Eldridge,* 424 U.S. at 328 n. 9, 96 S.Ct. at 899 n. 9 (1976); *Weinberger v. Salfi,* 422 U.S. at 763–64, 95 S.Ct. at 2465–66, it need not be taken into consideration on appeal if not raised before the district court. *Id. See also Rowland v. Califano,* 588 F.2d 449 (5th Cir.1979). There is no indication in the record currently before us that the 60 day requirement was raised by the Secretary below; nor is there any mention of the requirement in the district court's decision. In any event, the administrative *res judicata* bar is ordinarily not applied when an agency's decision is challenged on constitutional grounds. *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977).

In a recent decision cited in a footnote in the government's brief, the Second Circuit dismissed, for lack of jurisdiction, a class action complaint filed by persons whose disability benefits had been terminated. *Smith v. Schweiker,* 709 F.2d 777 (2d Cir. 1983). The disabled persons argued, *inter alia,* that specific evidence of medical improvement was required before benefits could be terminated. In *Smith,* however, all the named individuals had successfully appealed their terminations and were actually receiving the benefits in question at the time of the litigation. Moreover, no constitutional challenge similar to that made by plaintiffs here was raised. While the government may take some comfort from some of the analysis and comments contained in the Second Circuit's opinion, and while the opinion may have the effect of limiting *Jones v. Califano, supra,* to some extent, *Smith* appears unlikely to affect significantly our view of the issues before us.[11]

Although the Secretary may have raised "serious legal questions," she has failed to make a showing of probability of success on the merits. Considered both individually and collectively, the Secretary's arguments do not persuade us that there is a probability that this court will reverse the district court's decision to grant a preliminary injunction.

## CONCLUSION

The Secretary has the weaker position on both aspects of the interrelated test governing stays. The balance of hardships tips sharply toward the plaintiffs, even without including the public interest factor, and it is not probable that the Secretary will succeed on the merits of her appeal from the order granting a preliminary injunction. Finally, the public interest strongly supports denial of the stay.

The request for a partial stay is DENIED.

---

10. *Jones* involved a conflict between the Secretary and the Department's Appeals Council. Despite the fact that the Appeals Council had ruled repeatedly in favor of the claimants, the Secretary continued to adhere to a disapproved regulation. The Second Circuit held that the exhaustion requirement need not be met in light of the Secretary's refusal to change his policy. The case was remanded so that the district court could consider the propriety of class-wide relief and thus avoid "two standards of benefit calculation, one for claimants who seek review by the Appeals Council and one for claimants who do not." 576 F.2d at 19.

11. The Secretary also contends that the district court's preliminary injunction awards retroactive relief to plaintiffs and thus improperly "grants the plaintiffs all the affirmative relief sought." We disagree. The district court's order does not award any retroactive benefit payments. As the court said, "[i]t would be inappropriate to grant such an award at this juncture ... because this controversy has not been fully litigated and the plaintiffs have not requested such relief."

PREGERSON, Circuit Judge, concurring.

I concur completely in Judge Reinhardt's opinion. I write separately only to emphasize my concern over the Secretary's avowed policy of nonacquiescence with Ninth Circuit law as enunciated in *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982), and *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981). The Secretary's ill-advised policy of refusing to obey the decisional law of this circuit is akin to the repudiated pre-Civil War doctrine of nullification whereby rebellious states refused to recognize certain federal laws within their boundaries. The Secretary's nonacquiescence not only scoffs at the law of this circuit, but flouts some very important principles basic to our American system of government—the rule of law, the doctrine of separation of powers imbedded in the constitution, and the tenet of judicial supremacy laid down in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The government expects its citizens to abide by the law—no less is expected of those charged with the duty to faithfully administer the law.