James T. MAYES, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION, AND WELFARE, Defendant.

No. C–18–W–68.

United States District Court
M. D. North Carolina,
Wilkesboro Division.

Sept. 30, 1968.

Supplemental Opinion April 7, 1969.

John E. Hall and Jerone C. Herring, North Wilkesboro, N. C., for plaintiff.

William H. Murdock, U. S. Atty., and H. Marshall Simpson, Asst. U. S. Atty., Greensboro, N. C., for defendant.

## MEMORANDUM AND ORDER

EDWIN M. STANLEY, Chief Judge.

The plaintiff seeks judicial review, pursuant to § 205(g) of the Social Security Act as amended, 42 U.S.C. § 405 (g), of the final decision of the Secretary of Health, Education, and Welfare, denying his claim for Social Security disability benefits.

Plaintiff first filed an application for a period of disability and for disability insurance benefits on September 26, 1963, alleging that he became unable to work on June 23, 1961, due to injuries to his right hip and leg. The application was denied on the ground that plaintiff's impairments did not meet the "disability" test of the Act. On November 30, 1964, plaintiff filed a second application for disability insurance benefits, alleging that he became unable to work on June 23, 1961, due to tuberculosis and broken hip and leg. His 1964 application was initially denied, based upon the evidence then of record and the failure of the plaintiff to furnish additional evidence. Subsequently, based upon a re-evaluation of plaintiff's application in light of additional medical evidence, a period of disability was established, beginning October 15, 1962, and plaintiff was awarded disability insurance benefits.

Briefly summarized, the evidence presented in support of the 1964 application disclosed that plaintiff was born on February 27, 1924, and received a seventh-grade education. While at work in Montana with a bridge construction crew, on June 23, 1961, he fell from a bridge and suffered serious fractures of his pelvis and right leg. He was hospitalized for these injuries for six months. In September of 1962, after plaintiff had recovered sufficiently to be ambulatory with crutches, a chest X-ray disclosed pulmonary tuberculosis, and in October of 1962 he entered a sanatorium. He remained a patient in the sanatorium until March 8, 1963, when he left against medical advice. When he left the sanatorium, plaintiff's tuberculosis was considered to be still active, and it was believed that he needed additional hospitalization. In late 1964, plaintiff's pulmonary symptoms worsened and he again entered a tuberculosis sanatorium. Chest X-ray taken at that time showed a large cavity in the upper left lung field. Plaintiff was discharged from the sanatorium in February of 1966, at which time his tuberculosis was arrested and inactive. He was instructed, however, to continue taking medication. After leaving the sanatorium, plaintiff was under the care of Dr. Thomas L. McNiel, North Wilkes-

boro, North Carolina, a private physician.

On May 26, 1966, plaintiff was informed by letter that additional current medical information was needed in order to make a proper evaluation of his application "to establish disability for Social Security benefits," and it was requested that he be examined by Dr. Thomas E. Fitz, Hickory, North Carolina. Plaintiff was further advised to telephone or write Dr. Fitz so that he could schedule a date for the examination. On May 30, 1966, John E. Hall, Attorney, North Wilkesboro, North Carolina, advised that plaintiff had called to his attention the letter of May 26, 1966, requesting that an appointment be made with Dr. Fitz "with regard to an alleged application to establish disability for social security benefits." Mr. Hall went on to state that there was apparently some misunderstanding since plaintiff was already receiving disability benefits under the Social Security Act, and that he was under the care of Dr. Thomas L. McNiel of North Wilkesboro, who was administering treatment to him "three times each week." On June 3, 1966, defendant advised Mr. Hall that the examination by Dr. Fitz was desired to aid in a review of plaintiff's impairment to determine his continuing eligibility for benefits. Plaintiff contends that he then tried to make an appointment with Dr. Fitz, but was told that no examination was necessary. Dr. Fitz's secretary advised that plaintiff called and stated that he saw no reason for an examination, and that, therefore, he "would not come in." In any event, the defendant, on July 21, 1966, found and determined, based on plaintiff's failure to cooperate, that the plaintiff's disability ceased in July of 1966. On September 9, 1966, plaintiff was advised that the last disability benefit check he was entitled to receive was for the month of September of 1966. Upon request of plaintiff for reconsideration of termination of benefits, it was determined that plaintiff's disability ceased in October of 1966, and plaintiff was notified that his monthly benefit payments would end with the month of December of 1966.

Plaintiff thereafter requested a hearing before a hearing examiner, and the requested hearing was held on May 18, 1967. Plaintiff, his attorney, and a vocational expert appeared at the hearing. On June 2, 1967, the hearing examiner rendered his decision, finding that plaintiff's disability ceased in July of 1966, and that his entitlement to disability insurance benefits terminated with the last payment made in September of 1966. More specifically, the hearing examiner concluded that the medical evidence showed that by December of 1963 plaintiff's orthopedic impairment had improved to the extent that it no longer constituted a disability, and that by October of 1966 his respiratory impairment would not preclude him from engaging in certain light or sedentary occupations identified by the vocational expert.

The Appeals Council granted plaintiff's request for review of the hearing examiner's decision, and received additional medical evidence. On December 12, 1967, the Appeals Council rendered the "final decision" of the Secretary, affirming the hearing examiner's decision, except to modify the date of cessation of disability and termination of disability benefits. More specifically, the Appeals Council, considering the record as a whole, made the following findings:

"1. The record establishes that the claimant's medical impairments diminished to the point that he ceased to be under a 'disability,' as defined in the Act, effective with the month of October 1966;

"2. The claimant's period of disability and entitlement to disability insurance benefits were properly terminated effective the last day of December 1966."

On February 11, 1968, plaintiff instituted this action, seeking judicial review of the final decision of the Secretary. Following the filing of an answer and a certified transcript of administrative

proceedings, the parties cross-moved for summary judgment.

The issue before the Secretary was whether the plaintiff's "disability" had ceased, and if so as of what date. Since it had previously been determined that plaintiff had established a "disability," as defined by the Act, beginning October 15, 1962, and a resolution of the issue before the Secretary involved a determination of whether the evidence established that his impairment had diminished sufficiently so that it was no longer of such severity as to prevent him from engaging in substantial gainful activity, the issue before the Court is the substantiality of the evidence to support the Secretary's findings. The finding of the Secretary as to any fact, if rationally supported by substantial evidence, is conclusive. Thomas v. Celebrezze, 4 Cir., 331 F.2d 541 (1964). A reviewing court has the power to enter judgment "affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If the Secretary, on the basis of information obtained, believes that a claimant may have ceased to be under a disability, he may suspend the payment of benefits. 42 U.S.C. § 425.

Effective July 30, 1965, §§ 216(i) and 223(c) (2) of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(c) (2) were amended so as to liberalize the definition of the term "disability." Before the Amendment, the term "disability" was defined to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." After the Amendment, the term was defined to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last *for a continuous period of not less than 12 months.*" (Emphasis supplied.)

Under the 1967 Amendments to the Act, the statutory definition of "disability" was further clarified. The Amendment provides that a claimant is under "a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423. Work which exists in the national economy is defined to mean "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S. C. § 423. The 1967 Amendments became effective on January 2, 1968, and apply to decisions in civil actions which had not become final before that time. Davis v. Gardner, 6 Cir., 395 F.2d 681 (1968); Daniel v. Gardner, 5 Cir., 390 F.2d 32 (1968).

Aside from the 1967 Amendments to the Act, which had not been enacted on the date of the final decision of the Secretary, but apply to this action, it is doubtful if the decision of the Secretary would be sustainable. The evidence tending to establish that plaintiff's disability had diminished sufficiently so as to enable him to engage in substantial gainful activity is indeed scant. It is true that plaintiff's good faith was rendered suspect by his failure to report to Dr. Fitz for a physical examination, and by his refusal to cooperate with Dr. Mc-Niel. However, the Secretary must bear some of the blame for the plaintiff's not reporting to Dr. Fitz as directed. The request for the examination, apparently written on a form letter, referred to the need for current medical information in order to make a proper evaluation of plaintiff's "application" to establish disability for Social Security benefits. Plaintiff apparently did not understand

this because he was already receiving disability insurance benefits and did not have an "application" pending. He immediately took the request to his attorney for clarification, and it is apparent that the attorney was also confused. There is a sharp conflict between the plaintiff's testimony as to why he did not later report to Dr. Fitz for the examination and the information furnished by Dr. Fitz's secretary on an undated card. Before the confusion was resolved, the request for the examination was rescinded.

So far as the file discloses, the only current medical data before the hearing examiner were reports from Dr. Thomas L. McNiel and a report from Dr. E. S. Avery, Winston-Salem, North Carolina. On April 22, 1966, Dr. McNiel stated that the plaintiff had arrested pulmonary tuberculosis, was *unable to work*, and was under medication. On June 27, 1966, Dr. McNiel again reported that plaintiff had arrested pulmonary tuberculosis and was still *disabled*. The report set out the medication plaintiff was taking, and concluded that plaintiff was going to remain disabled and would have to "keep up" his medication until a "chest doctor [told] him to stop." On July 18, 1966, Dr. McNiel reported a lack of cooperation on the part of the plaintiff due to the fact that he had been unable to persuade him to seek expert care for his arrested tuberculosis. Dr. McNiel further reported that, due to the fact that plaintiff had refused to have an expert examine his chest, he discharged him from his care. On October 28, 1966, Dr. Avery, following examination, gave a diagnosis of "Old Fracture of right Tibia and Fibula, and Pelvis (history of). Moderate Advanced Pulmonary Tuberculosis. (Inactive). Emphysema (minimal to moderate, from pulmonary function test and history.)" Dr. Avery commented further that plaintiff's claim for disability stemmed more from old fracture of right leg and pelvis, than from tuberculosis or emphysema. He made no comment whatever concerning the plaintiff's ability to engage in any substantial gainful activity.

The only evidence offered before the hearing examiner was that of the plaintiff and Dr. Edward J. Dowd, a vocational expert selected by the hearing examiner and paid by the Secretary. There is nothing in plaintiff's testimony to indicate that he was then able to do any type of work. Dr. Dowd testified that he had examined all the exhibits in the case and listened to all the testimony given at the hearing, and based upon this information, he gave his expert opinion with respect to the employability of the plaintiff. Dr. Dowd did not profess to have any medical training, or any professional competency to evaluate medical reports. His opinion was that, based on medical factors as stated by the medical experts, and the plaintiff's level of education and previous work experience, plaintiff could not be gainfully employed in the occupation in which he spent his entire working years, and that there were "very few jobs that he could be gainfully employed in or [was] qualified to be engaged in." He then expressed the opinion that plaintiff was only capable of doing "sedentary or very light work." It was conceded, however, that even work of this type was limited because of the absence of some of the occupations in the area in which plaintiff lives, which is not a metropolitan area, and also because there were "few light jobs in the industry" in which plaintiff had spent his working years. Dr. Dowd suggested that plaintiff might engage in such work as a flagman on road construction, or possibly a timekeeper-clerk, a parking lot attendant, or a theatre ticket-taker. Again, it was conceded that all of these were jobs not commonly found in the area in which plaintiff resides. To repeat, none of these employment opportunities suggested by Mr. Dowd were actually available in the area where plaintiff lives, but only theoretically available in the national economy. This was totally insufficient prior to the 1967 Amendments to the Act, or at the time the Secretary rendered his final decision.

Cyrus v. Celebrezze, 4 Cir., 341 F.2d 192 (1965); Hanes v. Celebrezze, 4 Cir., 337 F.2d 209 (1964); Thomas v. Celebrezze, 4 Cir., 331 F.2d 541 (1964). Even after the 1967 Amendments, since it is conceded that plaintiff is unable to return to his former work, it is incumbent upon the Secretary to show that he is physically able to engage in substantial gainful work which "exists in significant numbers either in the region where [he] lives or in several regions of the country," and a finding of ability to engage in any substantial gainful activity must be based on evidence "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423.

In the present state of the record, the Court feels that simple justice dictates that the matter be remanded to the Secretary for further findings, based upon expert medical data bearing upon the severity of plaintiff's impairments. Dr. McNiel stated on two occasions in 1966 that plaintiff was disabled and unable to work due to "arrested pulmonary tuberculosis." Dr. Avery expressed no opinion whatever concerning the ability of the plaintiff to engage in substantial gainful activity. Dr. Dowd only expressed the opinion that plaintiff was capable of doing sedentary or very light work in some regions of the national economy, but there is nothing in the record to suggest that this opinion was supported by any expert medical data. There are surely medical experts available to both the plaintiff and the Secretary who are capable of examining the plaintiff and rendering an opinion, "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," with respect to the ability of the plaintiff to engage in substantial gainful activity. 42 U.S.C. § 423. Upon remand, however, the plaintiff must know and understand that, if he expects to establish his claim, he must fully cooperate with his own doctors and any doctors that might be suggested by the Secretary. Any further indifference or lack of cooperation may logically be assumed to stem from a desire to conceal facts, and thus tend to negate his good faith in claiming continued disability.

Accordingly, the motions of the plaintiff and the defendant for summary judgment will be denied without prejudice, and the cause remanded to the Secretary for further proceedings.

It is so ordered.

### Supplemental Opinion

The plaintiff seeks judicial review, pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405 (g), of the final decision of the Secretary of Health, Education, and Welfare, denying his claim for Social Security disability benefits.

On September 30, 1968, a Memorandum and Order was entered denying the cross-motion of the plaintiff and defendant for summary judgment, without prejudice, and remanding the cause to the Secretary for further administrative proceedings. As set out in said Memorandum and Order, which is incorporated herein and made a part hereof by reference, the cause was remanded for the primary reason that plaintiff, partly through his own fault and partly through the fault of the Secretary, had refused medical examinations requested by the Secretary to determine his continuing disability. It was observed that the plaintiff, if he expected to establish his claim, must fully cooperate with his own doctors and those suggested by the Secretary, and any further indifference or lack of cooperation would be assumed to stem from his desire to conceal facts, and thus tend to negate his good faith in claiming continuing disability.

Upon remand, the Secretary arranged for plaintiff to undergo consultive medical examinations, but the examinations could not be conducted due to the fact that plaintiff had left his home in Wilkes County, North Carolina, and moved to some place in Indiana. Attempted correspondence with him by his attorney and the Secretary was returned unclaimed. Since paintiff changed his address without notifying his attorney or

the Secretary, and his whereabouts could not be determined, the Secretary, justifiably denied disability insurance benefits and certified the entire administrative record back to the Court.

In view of the foregoing, the Court is of the opinion that the motion of the Secretary for summary judgment should be allowed, and that the motion of the plaintiff for summary judgment should be denied.

An order will be entered accordingly.