**Roselyn HILL, Wanda Dyer, Pete Cast, Larry Barnett, Luther Andrews, Zelma Webster, Barbara Luster and Sammie Smith, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. CIV–84–734–B.**

United States District Court, W.D. Oklahoma.

Aug. 30, 1984.

**1200**

John G. Fears and Galen Robinson, Norman, Okl.; Margaret Dawkins, Oklahoma City, Okl., and Kade McClure, Lawton, Okl., for plaintiffs.

William Price, U.S. Atty. by Robert Dennis, Asst. U.S. Atty., Oklahoma City, Okl., Gayla Fuller and Charlene M. Seifert, Dept. of Health and Human Services, Dallas, Tex., for defendant.

## OPINION

BOHANON, District Judge.

This matter comes now before this court upon plaintiffs' motions to certify a class and for a temporary restraining order and preliminary injunction. Also before the court are defendant's motions contained in her answer to dismiss for failure to state a claim upon which relief can be granted, and for lack of subject matter jurisdiction over the claims of plaintiffs Wanda Dyer, Pete Cast, Zelma Webster, Barbara Luster and Sammie Smith.

The plaintiff's complaint sets forth a number of claims for relief, some of which will require the court to consider the specific facts and circumstances of individual plaintiffs. The other claims which are common to all the plaintiffs and to the proposed class involve the standard used by the defendant Margaret Heckler, Secretary of Health and Human Services, through her agency, the Social Security Administration (SSA), in evaluating the medical condition of persons receiving benefits under the Social Security Act's disability provision.

Pursuant to an act of Congress passed in 1980,[1] the Secretary is required to review existing recipients at least once every three years for the purpose of determining the recipients' continuing eligibility. The medical standard utilized by the SSA in conducting these reviews is published in 20 C.F.R. §§ 404.1579, 404.1586, 404.1594, and 416.-994 and is summarized in the following policy statement from Social Security Ruling 81–6 (January, 1981):

> Where the evidence obtained at the time of the continuing disability investigation (CDI) establishes that the individual is not currently disabled or blind, a finding of cessation is appropriate. It will not be necessary to determine whether or how much the individual's condition has medically improved since the prior favorable determination.

Plaintiffs claim that this "current medical evidence" standard is improper and in fact illegal. By their motions they seek injunctive relief which would compel the Secretary and her agents to use the "medical improvement" standard expressly rejected by the above-quoted ruling.

In deciding these motions, the court is cognizent of the fact that its position may appear to be something like sticking a finger in a Holland dike that is already breached in many places allowing the ocean to flood in. Research indicates that circuit after circuit has succumbed to the unsound reasoning and emotional or sympathetic ap-

---

peals advanced by plaintiffs in actions quite similar to this one. Nonetheless, the Tenth Circuit has not yet committed this error, and this court feels duty bound to take the better legal course as opposed to one that is merely popular among other courts.

Let it be stated at the outset that this is a court of law, not a charity, and not a legislature. The court has heard the plaintiffs' very moving evidence: case after case of persons whose lives are no doubt full of misery. The spectacle should have moved anyone present at the hearing to resolve to give more of his or her own personal resources toward alleviating the plight of the disadvantaged. However, the question properly before this court is not whether these people need help. The question is rather whether Congress has mandated that aid in the form of disability payments be given to these people by the Social Security Administration. Plaintiffs have made no claim that the statutes controlling the SSA's payment of or termination of disability benefits are in whole or in part invalid because they violate provisions of the Constitution. This court's sole task, therefore, is to interpret those statutes to achieve the ends intended by Congress. *cf. Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983).

*Class Certification*

In their complaint, plaintiffs describe the class they request the court to certify as follows:

> The members of the class are all Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) beneficiaries residing in the State of Oklahoma who have been or are receiving disability benefits and who have presented a claim to the Secretary that their disabilities are continuing and whose entitlements have been terminated or may be terminated without the application of an improvement standard to their case, or who have been terminated or may be terminated due to the failure of the Secretary of the Department of Health and Human Services to give presumptive effect to the prior determination of disability. The class excludes SSDI and SSI disabled beneficiaries whose benefits were terminated because they have returned to substantial gainful activity, who failed to cooperate, who admit they have medically recovered, or who are no longer eligible because of nondisability factors.

The class so stated is, to begin with, too broad because of the special jurisdictional limitations Congress has placed on the ability of federal courts to hear claims arising under subchapter II of the Social Security Act, 42 U.S.C. §§ 401 et seq. (1976), covering federal old-age, survivors, and disability insurance benefits.

Section 405(h) of that codified statute, § 205(h) of the Act, provides that:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The "as herein provided" refers to § 405(g):

> Any individual, after a final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business ...

■ Before exploring in detail the ramifications of these sections, it should be noted that plaintiffs erroneously maintain that this court also has mandamus jurisdic-

tion under 28 U.S.C. § 1361 (1976).[2] In *Heckler v. Ringer,* —— U.S. ——, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) the Supreme Court declined to decide whether § 405(h) excludes mandamus jurisdiction in all Social Security cases, but made the following pertinent holding:

> The common law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff *only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty. See Kerr v. United States District Court,* 426 U.S. 394, 402–403 [96 S.Ct. 2119, 2123–2124, 48 L.Ed.2d 725] (1976) (discussing 28 U.S.C. § 1651); *United States ex rel. Girard Trust Co. v. Helvering,* 301 U.S. 540, 543–544 [57 S.Ct. 855, 857, 81 L.Ed. 1272] (1937).

> Here respondents clearly have an adequate remedy in § 405(g) for challenging all aspects of the Secretary's denial of their claims for payment ... including any objections they have to the instructions or to ... [a particular policy ruling] if either ultimately should play a part in the Secretary's denial of their claims. The Secretary's decision as to whether a particular medical service is "reasonable and necessary" and the means by which she implements her decision, whether by promulgating a generally applicable rule or by allowing individual adjudication, are clearly discretionary decisions.

*Id.* at ——, 104 S.Ct. at 2022–2023 (emphasis added). In the present case, too, plaintiffs have an adequate remedy in § 405(g) and the Secretary's decision to use only current medical evidence as opposed to evidence relevant to medical improvement in making disability reviews is clearly within the discretion granted her by § 405(a).[3] Section 405(g), therefore, provides the only

means for judicial review of the decisions made by the Secretary in this case.

The Supreme Court in *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979), held that § 405(h) does not foreclose class actions in Social Security cases, but that holding is not without some limitations:

> class relief is consistent with the need for case-by-case adjudication emphasized by the Secretary, *at least so long as the membership of the class is limited to those who meet the requirement of § 205(g).* [42 U.S.C. § 405(g) ] *See Norton v. Mathews,* 427 U.S. 524, 535–537 [96 S.Ct. 2771, 2776–2778, 49 L.Ed.2d 672] and nn. 4–8 (1976) (Stevens, J., dissenting). Where the district court has jurisdiction over the claim of each individual member of the class, Rule 23 provides a procedure by which the court may exercise that jurisdiction over the various individual claims in a single proceeding. (emphasis added)

This means that in the present case the court must scrutinize the class proposed by plaintiffs and make any modifications necessary to exclude individuals who do not fulfill the prerequisites to jurisdiction contained in § 405(g).

█ In addition to examining the class of *un*named plaintiffs, however, the court, in obedience to § 405(g)'s 60-day time limit for seeking judicial review, is obliged to observe that it lacks subject matter jurisdiction over the claims of some of the *named* plaintiffs. In particular, affidavits and documents filed in conjunction with the Secretary's brief in opposition to class certification which have not been contradicted or denied by plaintiffs show the following:

1. The named plaintiff, Sammie J. Smith, was sent notice of the SSA's Ap-

---

**2.** "The district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

**3.** "The Secretary shall have full power and authority to make rules and regulations into established procedures, not inconsistent with

the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder."

peals Council's decision not to review his case and of his right to commence a civil action in this district within 60 days of his receipt of the notice on December 15, 1983. Allowing five days for delivery of the notice, as required by SSA regulations, Mr. Smith's last opportunity to seek judicial review of the termination of his benefits was on February 20, 1984. The present action was not filed until March 20, 1984.

2. The named plaintiff, Zelma Webster, was sent notice of the SSA's final decision in her case and of her right to judicial review on September 20, 1983. Again allowing five days for delivery of the notice, the last day a district court could exercise jurisdiction over her claim was November 28, 1983.

3. Similarly, the named plaintiff, Barbara Luster, was sent her notice by the Appeals Council on September 26, 1983, and so lost her right to judicial review several months before this action was filed.

In *Weinberger v. Salfi*, 422 U.S. 749, 763–764, 95 S.Ct. 2457, 2464–2465, 45 L.Ed.2d 522 (1975), the Supreme Court characterized § 405(g)'s 60-day filing period requirement and the requirement that claims for judicial review be filed in the district where the plaintiff resides or has his principal place of business, as "respectively, a statute of limitations and appropriate venue." Although the *Salfi* court indicated that these requirements could be waived by the parties, in the instant case the Secretary has expressly not waived them. The court is, therefore, obliged to dismiss the complaint as to plaintiffs Smith, Webster and Luster in accordance with the Secretary's motion.

The court is likewise required to narrow the putative class beyond the description in the complaint to exclude all those otherwise qualifying persons who received no-

tice of a final decision from the SSA prior to January 20, 1984. That the statute of limitations contained in § 405(g) is so applicable to the determination of class membership is amply illustrated by the Supreme Court's denial of an emergency application to vacate a stay in *Heckler v. Lopez*, —— U.S. ——, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983), a case having important features in common with the present one.[4] There Justice Stevens, joined by Justice Blackman, dissented in part from the majority's decision but conceded the following:

> It is my understanding that this class action was filed on February 4, 1983, and that the class certified by District Court includes persons who were entitled to, but did not seek judicial review of an adverse final decision by the Secretary more than 60 days before February 4, 1983 (December 6, 1982). As I understand ¶ 4(c) of the injunction entered by the District Court, it grants relief to class members over whom the District Court had no jurisdiction—specifically, to class members who had received "final decisions" from the Secretary more than 60 days prior to February 4, 1983, and who had not timely sought judicial review. To the extent that the stay entered by Justice REHNQUIST applies to such persons, I agree that it was properly entered. These persons' right to seek administrative or judicial review of their termination decisions had expired, and they could obtain benefits only by requesting that the Secretary reopen their cases. However, the District Court had no jurisdiction to review the Secretary's refusal to reopen these cases. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Hence, the District had no jurisdiction over these persons and should not have granted them relief, see *Califano v. Yamasaki*, 442 U.S. 682, 701, 704, 99 S.Ct. 2545, 2557, 2559, 61

---

**4.** In particular, *Heckler v. Lopez* was also a class action seeking to compel the Secretary to use a medical improvement standard in disability review cases. *See Lopez v. Heckler*, 572 F.Supp. 26 (C.D.Cal.1983) *stay denied by* 713 F.2d 1432 (9th Cir.1983) *stay granted by* —— U.S. ——, 104 S.Ct.

10, 77 L.Ed.2d 1431 (Rehnquist, Circuit Justice, 1983) and *decision affirmed in part, reversed in part* 725 F.2d 1489 (9th Cir.1984) *application for stay denied in part by Heckler v. Lopez*, —— U.S. ——, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984).

L.Ed.2d 176 (1979); *Mathews v. Diaz,* 426 U.S. 67, 71, n. 3, 96 S.Ct. 1883, 1887, n. 3, 48 L.Ed.2d 478 (1976).

■ Section 405(g) also requires, by its venue clause, that the putative class be further restricted to exclude all persons not residing within the Western District of Oklahoma.

■ Besides its statute of limitations and venue provisions § 405(g) states a third requirement for judicial review of social security actions; that is, that there be a final decision made by the Secretary after a hearing. The Supreme Court has held this requirement to be a codification of the doctrine of exhaustion of administrative remedies, *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 13, 77 L.Ed.2d 1431 (Rehnquist, Circuit Justice 1983); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The Court does not construe the provision to follow that doctrine strictly, however:

> this condition consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The non-waivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. *And some decision by the Secretary is clearly required by the statute.*

*Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) (emphasis added). The emphasized portion of this quotation indicates a further flaw in the class description proposed by plaintiffs. Although the class is defined to insure that all its members have presented a claim for benefits to the Secretary, it includes persons whose benefits may be, but have not yet been, terminated by the Secretary. As to these persons, there has clearly been no decision by the Secretary reviewable under § 405(g), and this court, therefore, lacks jurisdiction over their claims.[5]

■ The Secretary argues that she also has not waived the requirement that the administrative remedies she has prescribed be exhausted by the plaintiffs in this case and states that for this reason the court lacks jurisdiction over the named plaintiffs, Wanda Dyer and Pete Cast, and untold members of the putative class. It also appears from the plaintiffs' complaint, although the Secretary does not claim it, that Luther Andrews' current administrative appeal of his latest benefit termination would deprive this court of jurisdiction over his claim here were the exhaustion requirement strictly enforceable. The Secretary's argument fails, however, because of the Supreme Court's holding in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Like the respondent in that case, the plaintiffs here have "raised at least a colorable claim that because of [their] physical condition[s] and the dependency upon the disability benefits, an erroneous termination would damage [them] in a way not recompensable through retroactive payments." *Id.* at 331, 96 S.Ct. at 900–901.[6] The *Eldridge* court also indicated that it is a "core principle" of the interpretation of statutes allowing judicial review that "statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered ...." *Id.* n. 11. In the present case the issue of whether the Secretary has improperly decided not to use the medical improvement standard in reviewing disability cases is collateral to each individual's substantive claim of entitlement to benefits and could be lost by favor-

---

**5.** *See Mathews v. Diaz,* 426 U.S. 67, 71–72 n. 3, 96 S.Ct. 1883, 1887–1888, n. 3, 48 L.Ed.2d 478 (1976): "the complaint does not allege, and the record does not show, that the Secretary has taken any action with respect to such persons that is tantamount to a denial. It follows that

the District Court lacked jurisdiction over their claims, *see Weinberger v. Salfi,* 422 U.S. 749, 764 [95 S.Ct. 2457, 2466] and that the class and subclass are too broadly defined."

**6.** *But see* fn. 7, *infra.*

able decisions by the Secretary on those substantive claims for reasons not involving the standard. *Heckler v. Ringer,* — U.S. —, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), cited by the Secretary, is distinguishable, for there only "essentially ministerial details" would remain for the claimants to receive the substantive relief they sought once the allegedly collateral issue was decided favorably. Here, even if a favorable ruling or the use of the medical improvement standard were made, plaintiffs would still have to pass a full fledged disability review, albeit one using a different medical standard, in order to re-qualify for benefits. This court, therefore, may exercise jurisdiction over the claims of otherwise qualified individuals who have not completely exhausted the administrative procedures prescribed by the Secretary.

■ This last point is not sufficient to save the class, however. Class actions brought under § 405(g) are not exempt from the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Califano v. Yamasaki,* 442 U.S. 682, 700, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979). Subsection (a) of that rule provides that "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable ..." The Tenth Circuit has interpreted this language as follows:

In class action suits there must be presented some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement. There is, however, no set formula to determine if the class is so numerous that it should be so certified. The determination is to be made in the particular circumstances of the case. The duty of establishing those particular circumstances rests with the party who asserts the existence of the class and that party must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. Moore's Federal Practice, 2nd Ed., V. 3B, § 23.05[3], and cases cited.

*Rex v. Owens,* 585 F.2d 432, 436 (1978); *accord Wallor v. International Harvester Co.,* 98 F.R.D. 560, 563 (N.D.Ill.1983); *Gilchrist v. Bolger,* 89 F.R.D. 402 (S.D.Georgia 1981); *see also Fleming v. Travenol Laboratories, Inc.,* 707 F.2d 829 (5th Cir. 1983).

■ In the present case, plaintiffs attempted to satisfy this numerosity requirement in their complaint with the naked assertion that "As of October, 1983, there were approximately 37,000 beneficiaries of SSI disability benefits and SSDI beneficiaries [sic]." This statement was plainly inadequate and of questionable relevance because the figure cited includes a great number of persons not satisfying the class definition even as then stated: those whose entitlements *had never been terminated,* those who had not "presented a claim" to the Secretary, those whose benefits were terminated because they returned to substantially gainful activity, and so forth. Though it is an obvious error, the complaint did not even allege that these 37,000 beneficiaries were residents of Oklahoma. Subsequently, in a reply memorandum allowed by the court after the hearing on plaintiffs' motions, the plaintiffs offered further information, gathered via discovery, in another attempt to demonstrate the numerosity of the class. This information shows the following:

1. In excess of 18,000 SSI recipients and over 37,000 SSDI beneficiaries resided in Oklahoma during each of the past four years.

2. From March, 1981, to March, 1984, 2,189 of these SSI recipients and 16,690 of these SSDI recipients were subjected to continuing disability investigations.

3. From March, 1981, to March, 1984, 286 of the above SSI recipients and 6,305 of the SSDI recipients received notices that their benefits would be terminated.

That is all. The plaintiffs have still failed to provide any but the most speculative of bases for finding that the putative class is so numerous that joinder of all its members

would be impracticable. They still have not excluded from their calculations those who have not presented a claim to the Secretary that their disabilities are continuing, those who have been terminated because they have returned to substantially gainful activity, those who admit they have medically recovered, those who appealed their terminations and have had their entitlements reinstated, those who refused to cooperate with the continuing disability investigation, and those who were adjudged ineligible for other reasons unrelated to medical disability. Further, the plaintiffs' figures cast no light on the number of persons satisfying the additional requirements determined *supra;* that is, those residing in the Western District of Oklahoma who have actually received a notice of benefit termination on or after January 20, 1984. The latter requirement alone has eliminated the vast majority of the potential class members counted by plaintiffs. *Cf. Zinser v. Continental Grain Co.,* 660 F.2d 754, 761 n. 11 (10th Cir.1981). Given the evidence before the court that the Secretary, effective April 13, 1984, implemented a moratorium on continuing disability review, the court concludes that it has little reason to suspect that the putative class members, being geographically proximate and ascertainable through SSA records, could not all be joined in a practicable manner. Accordingly, the plaintiffs' motion for certification of a class is denied.[7]

As a final note on this subject, the court observes that a bill, S. 476, passed by the United States Senate this year, mandating for the first time a modified version of the medical improvement standard, contains very detailed provisions denying review under the new standard to individuals who are putative members of class actions like this one which were not certified prior to May 16, 1984. Though the bill contains substantial differences from the House version, which are yet to be worked out in conference, such a definite expression of the will of one body of Congress is entitled to careful consideration by the courts.

*Temporary Restraining Order and Preliminary Injunctive Relief*

The United States Court of Appeals for the Tenth Circuit has indicated that for temporary or preliminary injunctive relief to be appropriate the moving party must establish:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor,* 619 F.2d 61, 63 (1980). In what follows, the bulk of the discussion will focus on the first of these prerequisites because the absence of relevant factual controversy in this case facilitates the resolution of the major issues at this time.

After sifting out references in their motion to the class for which certification has been denied above, it appears that plaintiffs seek basically two kinds of injunctive relief: (1) an injunction compelling defendant to reinstate monthly benefits for plaintiffs excluded from her current moratorium; (2) an injunction forbidding the Secretary to terminate the entitlements of the plaintiff disability recipients without giving presumptive effect to prior determinations of disability and without utilizing a medical improvement standard, and compelling her to review the cases of plaintiffs already terminated without using such procedures. Although certain aspects of these requests for relief are in the nature of (a writ of) mandamus, it will be presumed for the purposes of the present discussion that this fact does not present any problems in itself.

*The Moratorium*

The first requested injunction stems from the fact, noted previously in this opin-

7. A similar result was reached in *Askew v. Heck-*    *ler,* No. C 84–316 A (N.D.Ga. June 29, 1984).

ion, that effective April 13, 1984, the Secretary has declared a moratorium on periodic continuing disability review and ordered benefits to be continued or reinstated for recipients subject to such periodic review who have not received a final administrative determination of ineligibility. The Secretary declared the moratorium because the numerous and inconsistent court decisions requiring the SSA to utilize some form of medical improvement standard have rendered it impossible for her to administer the Social Security Act in the uniform nation-wide manner mandated by Congress. The ruling declaring the moratorium indicated the Secretary's awareness of the legislation pending before Congress and states that the moratorium is to remain in effect until such legislation is enacted.

The moratorium ruling expressly excludes some classes of review cases and denies them the benefit continuation or reinstatement effect enjoyed by cases within the moratorium. Plaintiffs protest this exclusion with respect to three such classes: "1) beneficiaries pursuing timely federal court appeals; 2) cases where the federal court has remanded the case back to the Secretary (regardless of reasons); and 3) beneficiaries pursuing timely administrative or judicial appeals denoted as 'medical diary' cases." Plaintiffs, some of whom fall within these classes, argue that the Secretary's decision to exclude them was arbitrary and irrational and, therefore, that the moratorium as implemented violates the Constitution's equal protection guarantees. Since the Equal Protection Clause is contained in the Fourteenth Amendment, which by its terms, applies only to the states, the court will presume that reference is intended to the Supreme Court's parallel construction of the Fifth Amendment's due process clause. *See e.g. Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975).

As to the first two classes named by plaintiffs, it is clear that all of their individual members had been given a final decision by the Secretary before the moratorium was implemented. The court finds nothing irrational or arbitrary about the Secretary's refusal to make a blanket reversal of her final decisions merely because those affected have sought judicial review in a timely manner. To compel her to do so would be to deny the government its right to avail itself of the due process of the courts. In this connection, it is important to realize that the reinstatement of benefits under the moratorium was not merely a granting of interim benefits, but was a consequence of the Secretary's actual *rescission* of the initial termination decisions for those recipients who had not had "the opportunity to pursue their periodic review claims through all administrative review levels" in the words of the moratorium ruling. Given that the Secretary has never conceded that existing law requires a medical improvement standard and that the line had to be drawn somewhere, with a view toward the pending legislation and, as the ruling states, "administering the periodic review process in the humane and fair way that the Department and the Congress intend," the Secretary's decision appears a very reasonable attempt to restrict the moratorium to those with cases not yet decided by SSA.

With respect to the third class identified by the plaintiffs, the difference between "periodic" review cases and "medical diary" cases is significant. The "periodic" review procedure, that is, mandatory review once every three years to determine the continuing eligibility of those receiving benefits, was first required by Congress in 1980 in an attempt to cull out from the ranks of benefit recipients those who were merely malingering. *See* H.R.Rep. 618, 98th Cong.2d Sess. 10 (1984). "Medical diary" cases, however, had been subject to review long before that time. The following excerpt from the ruling establishing the moratorium illuminates the distinction and provides an eminently rational basis for the Secretary's decision to exclude such cases from the benefit continuation or reinstatement:

The impairments of people scheduled for a continuing disability review pursuant to a reexamination diary are different from those selected for periodic review. Medical reexamination diary cases involve people who have impairments for which SSA expects them to recover in a short time and who were told to expect the review as of a specified month. The medical reexamination process has been in place since the beginning of the program and has not been controversial. Not looking at the claims of people who are fully expected to recover would be shirking SSA's stewardship responsibility. One of the factors that led Congress to require periodic review was its concern that SSA did not always process medical reexamination diary cases timely. This left some people on the rolls who did not meet the definition of disability. SSA believes it is appropriate to continue to process medical reexamination diaries for that group of beneficiaries who were scheduled for review when they were placed on the disability rolls to determine if expected medical recovery did occur. SSA will exercise great care to ensure that only people properly scheduled for medical reexamination are reviewed.

For these reasons, plaintiffs' request for injunctive relief from the exclusion of these classes from the Secretary's moratorium cannot possibly succeed on the merits and their motion for temporary and preliminary relief accordingly must be denied. In addition, there being no genuine question of fact in this regard, the Secretary's motion for dismissal for failure to state a claim upon which relief may be granted, together with other materials filed in this court will be construed to be a motion for partial summary judgment as to this issue and will be granted as indicated later in this opinion.

*Medical Improvement*

■ Plaintiffs' second request for injunctive relief strikes to the heart of the nationwide controversy which has had the effect, just described, of bringing effective administration of the Social Security disability review program to a nearly complete halt. That this has occurred is symptomatic of the extent to which federal courts of late have taken upon themselves to do inexpertly that for which only Congress has the necessary resources, expertise and constitutional authority. It is appropriate to examine in considerable detail, therefore, the arguments advanced in support of the judicial intervention.

As indicated at the outset, the court's task in this action is to interpret the Social Security Act to best achieve the ends intended by Congress when it enacted that law. To succeed on the merits of the medical improvement issue, then, the plaintiffs must convince this court that Congress intended the Secretary, in reviewing disability cases, to give presumptive effect to a prior determination of disability and terminate the entitlements of only those recipients for which the SSA or its agents can demonstrate that the medical condition of the recipient has improved since the initial determination of disability (unless nonmedical factors prevail). The court has received, and takes judicial notice of, certain legislative materials relevant to current congressional actions which demonstrate conclusively and beyond all reasonable doubt that Congress never intended any such thing. The court is further convinced by very clear language in *Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) that the courts which have granted or approved such relief entailing a presumption of continuing disability have disregarded the High Court's interpretation of the Social Security Act.

Senate Report 98–466 by the Committee on Finance, explaining the "new standard" (medical improvement) mandated by S. 476 passed this year, contains the following revealing language:

*Present Law*

There is *no distinction* in the law between how eligibility for disability benefits is to be determined for people newly applying for benefits and those currently on the rolls being reviewed to assess

their continuing eligibility. Eligibility or ineligibility is based on the standards of disability (in the law, *regulations and Commissioner's rulings*) in effect at the time of the most recent decision.

S.Rep. No. 466, 98th Cong.2d Sess. 7, 8 (1984) (emphasis added). The report makes reference to the definition of "disability" in 42 U.S.C. § 423(d)(1)(A) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." Nowhere does the current statute mention medical improvement or state that presumptive effect is to be given to prior determinations of disability thus giving those seeking to continue their eligibility an easier task than those seeking to establish eligibility for the first time. The statute also clearly provides in § 405(a), quoted at length, *supra* in footnote 3, that the Secretary has "full power and authority" to establish by rules and regulations the standards for benefit eligibility. The Finance Committee Report continues:

> In recent months, due both to independent actions by States *that are in violation of Federal law and guidelines* and to Court actions, the social security disability insurance program is no longer being administered in a nationally uniform manner, consistent with the goals of the Federal program. The issue of medical improvement and the standards to be applied in determining eligibility for people after they are on the benefit roll has been one of the central issues of contention. This *new standard* is thus intended to make explicit to the States administering the disability insurance program and to the courts the standards to be applied in determining continuing eligibility for benefits—the standards as set forth in national policy by the Congress .... the effective date of the medical improvement standard underscores the Committee's intention to ensure uniform application of the single standard of review.

S.Rep. No. 466 98th Cong.2d Sess. 9 (emphasis added)

It is important to note that despite its acceptance of the new medical improvement standard for the future as a necessary step in order to restore order to the administration of the disability insurance program, the Senate definitely did *not* accede to the other principle which plaintiff's claim to be current law in their pleadings before this court, namely, that the Secretary must give presumptive effect to prior determinations of disability:

> [T]he Committee considered carefully and rejected the proposal to shift the burden of proof in eligibility determinations from the claimant to the Government once the individual is on the benefit rolls. The weight of the evidence must demonstrate that the individual should remain on the rolls, not the reverse, where the weight of the evidence would have to warrant termination.... The Committee thus rejected putting up legal or procedural hurdles to removing from the rolls those people who can work and who have experienced some change in circumstances since the time of the last disability determination.

The Senate passed the bill released by the Committee without relevant amendment.

The Report from the Committee on Ways and Means, H.Rep. No. 618, 98 Cong.2d Sess. (1984), accompanying the more liberal House version of the bill, H.R. 3755, even more explicitly reveals that current law does not mandate use of the medical improvement standard:

> Section 101 of the bill provides *for the first time* in the social security statute a specific standard that must be met before a disability beneficiary can be found to be not disabled. SSA has always scheduled a certain percentage of disability beneficiaries for re-examination to determine whether they are still disabled. *The statute contains no guidelines for appropriate criteria to govern these re-examinations,* other than the definition of disability.

.     .     .     .     .

The committee recognizes that the problems with the current review have arisen, at least in part, because the criteria for termination of benefits as a result of review *were left unstated in the law. SSA has therefore had wide discretion to apply whatever standards it deemed appropriate ....*"

H.Rep. No. 618 at 9, 11 (emphasis added)

To avoid unduly extending the length of this opinion with extensive quotations from these legislative materials, the court will merely assert that they demonstrate emphatically the excellent depth and competence of research and analysis of which only the Houses of Congress are capable. Federal judges with one or two law clerks assisting them should not presume to equal the meticulous work accomplished by Congress with its staffs in such purely legislative matters as these. This court concurs entirely with the assessment clearly reached by both Houses of Congress despite their differences: the question of mandating a medical improvement standard *vel non* is a matter to be resolved by Congress.

Plaintiffs argue that injunctive relief is especially appropriate in this case because the Secretary has adopted a policy of "nonacquiescing" in decisions by some circuit courts of appeal that mandate her use of the medical improvement standard. What the Secretary's policy means is that she obeys the circuit court's decisions in the cases and with respect to the particular parties before the court when the decision was made, but issues a formal ruling instructing her agents not to consider the court's decision to be binding precedent in other disability cases within the circuits involved. Plaintiffs argue and are supported by opinions of some circuit courts that the Secretary's policy constitutes a violation of the constitutional doctrine of separation of powers. *See Lopez v. Heckler,* 725 F.2d 1489 (9th Cir.1984); *Hillhouse v. Harris,* 715 F.2d 428 (8th Cir.1983). In light of this court's determination that the standard of review to be imposed is within the Secretary's discretion until *Congress*

dictates otherwise, the protestations of these circuit courts resemble the pot's insult to the kettle.

Of paramount importance is the fact that the rationale underlying the circuit court opinions mandating the medical improvement standard flies in the face of the Supreme Court's interpretation of the relevant statutes. The ninth circuit, in *Lopez v. Heckler,* 713 F.2d 1432, 1434 (1983) stated: "The principal rationale underlying these decisions is that the Social Security Administration's initial determination of disability creates a presumption that the person remains disabled." This statement directly contradicts the following passage from *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

> In order to establish initial *and continued* entitlement to disability benefits a worker must demonstrate that he is unable
>
> "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."
>
> 42 U.S.C. § 423(d)(1)(A).

To satisfy this test *the worker* bears a *continuing burden* of showing, by means of "medically acceptable clinical and laboratory diagnostic techniques," § 423(d)(3), that he has a physical or mental impairment ...

(emphasis added). The Committee on Ways and Means acknowledged in its report this year that this decision essentially repudiates the Ninth Circuit's position:

> From 1969 to 1976, SSA's policy, established originally by an administrative law judge in one hearing, was to not terminate benefits for anyone whose condition had not improved since the initial determination of eligibility. This policy was reversed in 1976 in internal SSA directives. Shortly thereafter, the Supreme Court, in *Mathews v. Eldridge,* agreed with the agency that the burden

of proving continuing eligibility for benefits was on the beneficiary.

H.Rep. No. 618 at 9. The Secretary is, therefore, confronted by circuit courts accusing her of unconstitutionally refusing to acquiesce in their disobedience toward the Supreme Court and usurpation of legislative prerogatives which thwarts her attempt to administer the Social Security Act in the uniform nationwide manner emphatically mandated by Congress.

The court grants that the Secretary's decision to not seek Supreme Court review of this matter appears to have been unwise and may well substantiate the claim that she has brought her problems upon herself. Nonetheless, there is little reason to believe that these problems are relevant to this case absent some specific evidence of nonacquiescence in decisions of the Tenth Circuit.

Plaintiffs claim that the Tenth Circuit did in fact adopt the medical improvement standard in an unpublished opinion, *Van Natter v. Secretary of Health, Education and Welfare,* No. 79–1439 (10th Cir., Jan. 8, 1981). *Van Natter* referred to the *Mathews v. Eldridge* passage cited above but did not discuss its language in detail, relying instead upon a First Circuit case, *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996 (1975), decided before *Eldridge.* Because the *Miranda* opinion seems to be central to the current furor, its relevant passage is here quoted at length:

> The district court may also have based its review of the Secretary's findings upon a more exacting standard than the substantial evidence test laid down in 42 U.S.C. § 405(g). Citing *Pedroza v. Secretary,* 382 F.Supp. 916 (D.P.R.1974), the court described the Secretary as having the burden of proof on the issue of Miranda's continued disability, and as having to produce medical evidence that runs "in a positive vein". *If this means that the Secretary's finding of termination must rest upon more than substantial evidence, the court erred.*

The concept of "burden of proof" is in this context rather confusing. It is true that one claiming benefits is sometimes described as having the "burden of proof", meaning that he must furnish requisite medical and other evidence within his grasp, *see* 42 U.S.C. § 423(d)(5), and show reasonable diligence in maintaining his claim. *See Mayes v. Secretary,* 300 F.Supp. 76 (M.D. N.C.1968). For his part, however, the Secretary must make an investigation that is not wholly inadequate under the circumstances. And once having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing. This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed. As for the claimant, he continues at all times under a duty to exercise reasonable diligence in furnishing the Secretary with evidence relevant to his claim.

514 F.2d at 998 (emphasis added). The Tenth Circuit in *Van Natter* found the *Miranda* court's standards to be reasonable and noted that they did not appear to conflict with *Eldridge.* Citing *current medical evidence* given by two psychiatrists in their testimony before the administrative law judge who originally heard the *Van Natter* case, the circuit court found substantial evidence of medical improvement and *affirmed* the termination of benefits.

It should be clear that the First Circuit's explanation of substantial evidence approved in *Van Natter* is not equivalent to the Ninth Circuit's current presumption of continuing disability. It is also noteworthy that the First Circuit cited absolutely no authority to support its statement that the Secretary may not terminate without showing medical improvement or error in the initial determination of disability. It is thus something of a wonder where the medical improvement standard or stan-

dards ordered by so many courts today came from—clearly not from the Congress.

As it so happens, at the time *Miranda* was decided, the *SSA* employed the medical improvement standard. *See* H.Rep. No. 618 at 9, quoted above. It is thus quite probable that the First Circuit's analysis of substantial evidence was intended to be *descriptive* rather than *prescriptive* of SSA policy. Subsequent to *Miranda,* the SSA changed its policy and, as the House Committee report indicates, the Supreme Court in *Eldridge* then "agreed with the agency that the burden of proving continuing eligibility for benefits was on the beneficiary."

It is not surprising, then, that the *Van Natter* court failed to appreciate the difference between the holdings in *Miranda* and *Eldridge* since the court's opinion does not indicate that it had been informed of the change in SSA policy. Since the new standard was not formalized and published in the Federal Register and Code of Federal Regulations until 1980, it is quite possible that it escaped the court's attention entirely. Further, the modern court-developed doctrine represented by the buzz-words "medical improvement" simply was not before the court. There was no question in *Van Natter* of invalidating a rule made by the Secretary which on its face, at least, appears to be entirely within the discretion granted by 42 U.S.C. § 405(a). *Van Natter* appears to have been considered by the Tenth Circuit a routine Social Security appeal not worthy of a published opinion, and there is no indication that it was considered to be a vehicle for establishing a major new rule of interpretation for the Social Security Act. Although the opinion has precedential value, it is distinguishable on the basis of its circumstances from the quite different problem now facing this court, that is, whether to order the Secretary to disregard her own lawfully made nationwide regulations and follow instead a vague court-made standard. In short, it appears to this court that the Tenth Circuit has never expressly held that the standard of review currently mandated by the Secretary's regulations is illegal. It is, there-fore, understandable that the Secretary has never found it necessary to make a ruling of non-acquiescence in the *Van Natter* opinion as she has in every other circuit opinion imposing the medical improvement standard.

It is appropriate at this point also to observe that in *Van Natter,* as in many cases, it is hard to determine just what the practical difference between the medical improvement and current medical evidence standards is. If a claimant has once been determined to be disabled but subsequent current and substantial evidence shows her to be not disabled, it seems that any rational person would find an appropriate basis for an *inference* that either the medical condition of the claimant has improved or there was a mistake in the initial determination. As the Second Circuit has said:

> While the legal issue raised by plaintiffs may seem well-defined to them, it seems rather unformulated to us. What is meant by evidence of medical improvement, for example, is somewhat ambiguous. If disability status has been previously determined on the grounds of paralysis from the neck down, a video tape of the claimant playing football might well seem sufficient evidence to terminate benefits.

*Smith v. Schweiker,* 709 F.2d 777, 780 (1983). If plaintiffs are urging, as they appear to be, that the SSA be denied the benefit of inferential reasoning, then this court has no doubt that their claims should be dismissed without further ado.

In any event, the defendant's policy of non-acquiescence cannot be an issue in this case. Whatever may be the rule in other circuits with regard to the necessary standard of review for disability termination, the decisions of those circuits are not binding precedent within this circuit. The problems the Secretary may have created for herself by non-acquiescing in those other circuits are, therefore, irrelevant to the proceedings before this court because there has been no Tenth Circuit ruling on the current codified disability review standard

and no non-acquiescence in the decisions of that court. For this court to mandate the medical improvement standard, as plaintiffs also seem to suggest, to punish the Secretary's *anticipated* non-acquiescence in that standard would be both a grotesque abuse of judicial power and a classic case of putting the cart before the horse.

Although the preceeding discussion of the merits of plaintiffs' case is dispositive of the request for temporary and preliminary injunctive relief, some reference should also be made to the balance of hardships and public policy prerequisites for such relief.

■ The plaintiffs quote the Ninth Circuit Court of Appeals in *Lopez v. Heckler*, 713 F.2d 1432, 1437 (1983) stating that "the physical and emotional suffering [of terminated beneficiaries] is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government." It is true that in evaluating a stay of a preliminary injunction, as the Ninth Circuit was when it made this statement, a court must, as when granting a preliminary injunction in the first place, determine the possibility of irreparable injury and the balance of hardships among the parties. Nonetheless, to adapt a cavalier attitude toward the financial burden a decision will place upon our debt-ridden government when deciding such an issue is to use a balance scale with only one arm. Such conduct deviates from a conscientious judicial activism truly motivated by a concern for constitutional rights and must be viewed as a dangerous step toward judicial irresponsibility. Those who are entrusted with judicial power should never forget "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Schweiker v. Hansen*, 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981) (quoting *Federal Crop Insurance Co. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)); *see Heckler v. Lopez*, —— U.S. ——, 104 S.Ct. 10, 14, 77 L.Ed.2d 1431 (Rehnquist, Circuit Justice 1983).

In this connection it is pertinent to note the additional comments of Senator Russell B. Long in the Finance Committee Report discussed *supra*. In reference to S. 476's adoption of a medical improvement standard, Senator Long stated:

The committee bill is estimated to cost $2.5 billion over a 5-year period. Virtually this entire amount will be paid to persons who are able to work.

These very significant costs of this legislation are justified by the proponents of the bill on the basis of the need to deal with the current chaotic situation which prevails in the administration of the social security disability program. Even if this argument were to be accepted, it remains deeply troubling for us to expend $2.5 billion, at a time when we are struggling to cope with alarming Federal deficits, to provide benefit payments to individuals who would be unable, despite several levels of appeal, to establish their eligibility.

The situation will be much worse if the legislation, instead of resolving the current chaotic situation, simply serves as a signal for further efforts to broaden eligibility. The bill as reported by the Committee on Finance clearly does not intend such a result. *However, the costs and caseloads of this program have over the years proven highly volatile and difficult to control.* The adoption by the Congress of a dual standard of eligibility creates a tension which could be laying the groundwork for further expansion of the program. It may prove difficult to maintain a situation in which individuals are denied admission to the benefit rolls—even though equally or less disabled persons who managed to get on the rolls are allowed to keep receiving benefits.

. . . .

. . . The bulk of the growth in the costs of the disability program cannot be adequately explained except on the basis that the program has been administered in such a manner as to pay benefits to a *broader* population than Congress intended the program to serve.

S.Rep. No. 466, 98 Cong., 2d Sess. errata print at 4, 7 (1984) (emphasis added). The simple fact is that courts threaten to bankrupt the Social Security system and this country when they adamantly refuse to heed the guidance Congress has attempted to give them in this area. Far from ordering the Secretary to adopt a more liberal non-statutory standard of review in disability cases, this court urges her to pay stricter attention to her congressional mandate. Social Security disability payments are *not* to be given on the basis of the compassionate feelings of those administering the SSA or reviewing SSA determinations in the courts. They are to be given on the basis of *law*. The extent to which the law governing this program created entirely by statute is a satisfactory expression of governmental compassion is a matter quintessentially within the purview of Congress, not the executive, and not the judiciary. If judges find that the law governing disability payments is too harsh, they have the same rights as any other citizens to petition their congressmen for a change.

Quoting another passage from Senator Long's comments, criticizing, incidentally, a case upon which plaintiffs rely in their briefs:

In a recent case (*Polaski v. Heckler*), a U.S. District Court judge excoriated the Secretary for following her own regulation in violation of what he deemed to be the "fundamental policies at the heart of the disability program." He found these fundamental policies embodied in a law review article by another judge to the effect that the disability statute "should be broadly construed and liberally applied." On the basis of his findings that the Secretary was not obeying what he calls "Eighth Circuit Law," this judge ordered the Secretary to substitute his policy judgment for hers (*and that of the Congress*) in carrying out the Social Security Act in an area covering seven States.

This case would not be so troubling if it were atypical. But apparently it is almost the judicial norm. Courts do, of course, have the responsibility to carry out the law and to resolve questions of interpretation. In so doing, however, they should be guided by the statute and its legislative history, not by abstract theories found in law review articles. *If the judge in this case had bothered to examine the statute and legislative history, he would have ample evidence of Congress' concern not that the law be more broadly construed, but that it be more narrowly construed.* He would also have found great concern on the part of Congress that this law be administered *more uniformly*. This might have led him to give more weight to national law than to "Eighth Circuit Law." In the United States, the law is the law of the land and it is made by Congress. The courts, including the district and circuit courts, have an important role in carrying out and enforcing the law. *But Circuit courts are not regional legislatures.*

S.Rep. No. 466, errata print at 5, 6 (emphasis added).

The court is abundantly persuaded by the foregoing discussion that it would be entirely inappropriate to grant plaintiffs injunctive relief preliminary or otherwise. Federal Rule of Civil Procedure 12(b) provides that: "If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ...." Defendant in this case moved for dismissal for failure to state a claim upon which relief can be granted in her answer and in subsequent briefs numerous matters outside the pleadings have been presented to the court. Further, at the hearing on July 6, 1984, and in briefs both before and after said hearing, plaintiffs have had an ample opportunity to present evidence and indicate what kinds of evidence they deem relevant to the question of injunctive relief. The court is satisfied that defendant has no significant dispute with plaintiffs' evidence, that there is no genuine issue as to any material fact, and that it would only waste

the resources of these parties and of this court to allow any more debate on the matter. As the preceding discussion indicates, the defendant is clearly entitled to judgment on this issue as a matter of law. Accordingly, defendant shall be, in the accompanying order, awarded a partial summary judgment as to the issue of injunctive relief. Fed.R.Civ.P. 56(d).

This judgment will terminate this court's jurisdiction over the claims of the named plaintiffs Wanda Dyer, Pete Cast and Luther Andrews which was premised upon the existence of the medical improvement question as an issue collateral to their substantive claim for benefits.[8] The court must, therefore, grant the Secretary's motion to dismiss the claims of Dyer and Cast for lack of subject matter jurisdiction, and will on its own motion dismiss Luther Andrews' claim, without prejudice to these plaintiffs rights to pursue their pending administrative actions. *See* Fed.R.Civ.P. 12(h)(3).

This leaves before the court only the individual claims of Roselyn Hill and Larry Barnett which are by themselves in the nature of ordinary claims for judicial review of a final termination decision by the Secretary. These claims were apparently timely filed and are within this court's jurisdiction. The pleadings filed thus far in this case, however, being oriented primarily toward the class action and injunctive relief issues do not properly frame the issues involved in just these two review cases. To insure that the plaintiffs Hill and Barnett receive a fair assessment on the merits of their cases, therefore, the court will order them to file amended complaints in this action within 20 days of the filing of this

opinion. The Secretary will be ordered to answer the amended complaints within 20 days of their filing, including the certified copies of the transcripts of the records of the findings and conclusions upon which these plaintiffs base their complaints, as required by 42 U.S.C. § 405(g) (1982).

---

**8.** Although the potential for irreparable injury was also a factor in *Mathews v. Eldridge* cited earlier, Congress in 1983 assumed responsibility for alleviating these damages by providing for the payment of interim benefits after termination, recoverable by SSA in the event of a final unfavorable decision, through a claimant's appeal to an administrative law judge. *See* Pub.L. 97–455 § 2, 96 Stat. 2498 (Jan. 12, 1983) codified at 42 U.S.C. § 423(g) (1982). The court feels, therefore, that the potential for such damages can only provide a basis for waiving the exhaustion requirement of § 405(g) to the ex-

tent it is tied to a properly collateral issue. Although this legislation lapsed June 1, 1984, and will not be revived until both Houses of Congress agree on a version of the SSA legislation presently in conference, the court finds no reason to grant these three plaintiffs more favorable treatment than the many other appealing claimants nationwide. Congress is aware of their plight and retains the sole authority to extend its own deadlines. In any event, it appears that some of these plaintiffs may be within the scope of the Secretary's moratorium.